FOOD FAIR STORES, Inc. v. FOOD FAIR, Inc.

FOOD FAIR, Inc. v. FOOD FAIR STORES, Inc.

Nos. 4402, 4403.

United States Court of Appeals First Circuit.

Sept. 21, 1949.

Rehearing Denied Oct. 11, 1949.

Arthur L. Sherin, Boston, Mass. (Norwood Cox, Edward W. Lider and Sherin & Lodgen, Boston, Mass., and Stein & Stein, Union City, N. J., on brief), for Food Fair Stores, Inc.

Maurice Tobey, Boston, Mass. (William L. Berger and Gabriel V. Mottla, Boston, Mass., on brief), for Food Fair Inc.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and LINDLEY, District Judge.

WOODBURY, Circuit Judge.

These are cross appeals from a final decree enjoining the defendant from using the words "Food Fair" in its business (that of operating a supermarket on Harvard Street in Brookline, Massachusetts) "un-

less such words are prefaced by a descriptive word or words such as Rodman's, Brookline or New England." The plaintiff on its appeal assigns the limited scope of the injunctive relief afforded as error. The defendant as appellant contends, first, that federal jurisdiction is lacking for want of a sufficient amount in controversy, and, second, that even if federal jurisdiction exists, the plaintiff is not entitled to any relief under the applicable law.

At the outset of its complaint the plaintiff alleges that it is a Pennsylvania corporation, that the defendant is a corporation existing under the laws of the Commonwealth of Massachusetts, and that the value of the matter in controversy, exclusive of interest and costs, is in excess of $3,000. Next the plaintiff alleges that it is, and for many years has been, engaged in the business of operating a chain of supermarkets in Maryland, Delaware, New York, New Jersey and Pennsylvania in which it sells at retail the products usually sold in grocery stores; that beginning in 1935 it adopted the practice of incorporating subsidiaries using the words "Food Fair" in their names to operate its markets; that in 1942 it merged these subsidiaries with itself at which time it changed its name from its original one of Union Premier Food Stores, Inc. to its present one of Food Fair Stores, Inc. by which it has since continuously been known; and then it alleges that beginning in 1935 it "adopted and used, and since that date has continuously to the present time used, the unique trade name Food Fair in connection with the conduct by it and by its subsidiary corporations of said retail food supermarkets."

Following this the plaintiff sets out its growth from a single store in 1935 to 95 stores having gross sales during the calendar year 1947 amounting to approximately $120,000,000 making it the eighth largest retail food chain in volume of national sales in the country and subjecting it to comment in magazines of national circulation; that in April, 1946, it caused a wholly owned corporate subsidiary known as Food Fair Stores Corporation to be registered and qualified to do business in Massachusetts as a foreign corporation;[1] that its advertising expense over the period of its expansion amounted to approximately $4,000,000, and that in its advertising it had long made prominent use of the unique phrase "The Food Department Store", which, it says, "is intended to and does build up and maintain the reputation, good-will and value of the name Food Fair." Then the complaint continues: "Because of the nature and extent of the business and advertising of plaintiff, the name Food Fair and the phrase The Food Department Store, as used in connection with the name Food Fair, have become known throughout the United States, including the area known in the Commonwealth of Massachusetts as Greater Boston, as referring to plaintiff and its stores, and both said unique name and said unique phrase, used singly or together, have acquired such a secondary meaning as to have become associated by the public generally, including the public in said Greater Boston, with plaintiff and its retail supermarkets."

Furthermore the plaintiff alleges that its stock is widely held throughout the United States, having had since 1937 approximately 500 stockholders in Massachusetts, particularly in Greater Boston; that its stock is listed on the New York Stock Exchange and its price quoted in the daily newspapers under the name Food Fair, and that such papers from time to time publish its financial statements and make comments concerning its business; and that its stockholders periodically receive its financial statements wherein "the trade name, nature, extent and volume" of its business are described in detail.

Then the complaint goes on to allege that when the defendant opened its supermarket in Brookline on December 18, 1947, it was well aware of the plaintiff's chain and the value of its unique name and its unique advertising phrase but nevertheless appropriated both, and, in addition, simulated the

[1]. In addition the plaintiff alleges that it and its associated companies, all of which have names containing the words Food Fair, are qualified to do business in 47 states of the United States.

plaintiff's stores in architecture, style, color scheme, layout, design, and method of operation; prominently displayed the name Food Fair on signs affixed to the building both inside and outside and sold large quantities of food products bearing labels containing, among other things, the phrase Food Fair.

All this it is alleged was done by the defendant knowingly and "with the purpose of trading upon and appropriating for its own profit the reputation, good-will and value connected with plaintiff's said trade name and unique phrase, and with the purpose and intent of inducing the public to believe that defendant is connected with the plaintiff, that defendant's store is one of the stores owned and operated by plaintiff, and the quality of the merchandise and service offered the public by defendant is similar in kind and equal in quality to that offered the public by the plaintiff."

Wherefore, it is alleged "there is reasonable probability that the general public, investors in stocks and securities, and vendors of merchandise to the retail trade, will be deceived into believing that the defendant is affiliated with or connected with the plaintiff" and "The use by the defendant of said trade name, Food Fair and the unique phrase The Food Department Store, either singly or together, will result in injury to the plaintiff's business reputation, and will further result in dilution of the distinctive quality of the plaintiff's said trade name, Food Fair, and the plaintiff's said unique phrase The Food Department Store."

The defendant in its answer denied that the matter in controversy exceeds the sum of $3,000; said that it had no knowledge as to the truth of the plaintiff's allegations with respect to the growth of its business since 1935, the present scope thereof, and its use therein of its name and advertising slogan; denied that either was unique; admitted that it had adopted and was using the name Food Fair for its supermarket but denied its use of the advertising slogan "The Food Department Store"; denied that it had selected its name either with full knowledge of the plaintiff's existence or with any intention "to appropriate any rights or benefits belonging to the plaintiff"; denied that it ever intended to induce the public to believe that it was "connected with the plaintiff"; and further answering said "that the words Food Fair and the Food Department Store are in common use in the New England area and elsewhere to describe the sale of food generally, and that such words as so used are in the public domain and not subject to exclusive appropriation by anyone."

## I. Jurisdiction

Since there is no suggestion of a federally registered trade mark, federal jurisdiction, if it exists, must rest upon the diversity of the citizenship of the parties, which is conceded, and an amount in controversy between them in excess of $3,000, which is not. 28 U.S.C.A. § 1332(a) (1). Thus on the jurisdictional phase of the case the sole question is the value of the matter in dispute.

In considering this question we turn first to the plaintiff's complaint, for to litigate in a federal court a plaintiff "must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135. In the complaint there is a clearly adequate formal allegation that the requisite jurisdictional amount is involved. And "Such a formal allegation is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, in which case the suit should be dismissed by the court sua sponte or upon the defendant's motion." KVOS, Inc. v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 200, 81 L. Ed. 183.

Looking at the allegations in the complaint as a whole it would appear that the plaintiff is using, and for years has used, the name Food Fair in its business of operating a large and expanding chain of retail supermarkets in the Middle Atlantic States, each store no doubt doing an essentially local business, and that the defendant recently opened a similar market,

also no doubt doing an equally local business, under the identical name in Brookline, Massachusetts. Thus it is made to appear that the parties are using the same name in the same line of business but not in the same locality. And there is no allegation that the defendant is diverting any customers away from the plaintiff. Indeed the present spheres of the parties' operations are so far apart geographically that considering the essentially local nature of the business involved, there is no immediate likelihood of the plaintiff losing any customers to the defendant. It cannot be seriously suggested that any prospective customer of a retail supermarket in Brookline would for a moment consider the relative advantage of being served by such a market in his community as against being served by one as far distant as the plaintiff's nearest store in New York. Neither is it alleged that the defendant's goods or services are inferior to those offered by the plaintiff. Thus the injury alleged consists solely in the dilution, as it has come to be called, of the plaintiff's mark, i.e., the destruction of that mark's special signification, or secondary meaning, of the plaintiff's stores.

██ Naturally, such an injury as this is not susceptible of exact valuation in money. But this does not negative federal jurisdiction. Nor is it fatal that the complaint does not contain categorical affirmative allegations tending to support, either directly or by inference, the general allegation of injury in excess of the amount necessary for federal jurisdiction, for to justify dismissal when there is an adequate formal allegation of an amount in controversy sufficient to confer federal jurisdiction, it must appear to a legal certainty from the rest of the complaint that the claim is really for less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845. And this definitely does not appear. On the contrary the allegations of the plaintiff's complaint which we have summarized seem to us if anything to support the general allegation of jurisdictional amount. Certainly the complaint in the case at bar is as adequate

for jurisdictional purposes as the complaint held adequate for that purpose in KVOS, Inc. v. Associated Press, supra.

██ But this does not end the jurisdictional phase of the instant case. The defendant in its answer traversed the plaintiff's general allegation of amount in controversy thereby raising an issue of fact as to which the plaintiff must carry the burden of persuasion if it is to avoid having its complaint dismissed. McNutt v. General Motors Acceptance Corp. supra.

The court below did not consider this issue in preliminary proceedings, as it might have done. Instead it postponed consideration thereof until trial on the merits. At the trial it took evidence on the issue of amount actually in controversy following which it found as a fact that [83 F.Supp. 445, 452] "the value of the object to be gained in this suit * * * could reasonably be thought to exceed $3,000", wherefore it concluded that federal jurisdiction existed. This finding and the conclusion based thereon are challenged by the defendant on its appeal.

In support of its ultimate finding of a genuine controversy over an amount adequate for federal jurisdiction the court below found that the plaintiff's origin and development were substantially as alleged, except that by the time of the trial it was operating 103 stores, had further expanded its business into the states of Florida and West Virginia, and was doing business at an annual rate of gross income approaching $150,000,000; that it had used the name Food Fair to the extent alleged and was still using it; that as a result of this use the name had acquired a secondary meaning signifying local retail supermarkets operated by the plaintiff which deserved protection as a trade name; and that its name was known in Massachusetts by "investors and others in financial circles"; by operators of supermarkets, chain grocery stores, and like retail outlets; by wholesale suppliers of fish and other foods, and also, to a limited extent, by average customers of retail food stores.

The court then went on to find that the defendant corporation was organized in 1947 by one Benjamin B. Rodman, a mar-

ket man with a score of years experience, who ever since had been its chief executive officer in charge of its operations and policy; that when Rodman adopted the name Food Fair for his supermarket he did so with knowledge of the plaintiff's earlier use of that name and knowledge of the expanding character of the plaintiff's chain, but that his intention in doing so "was chiefly to get the benefit of a name which was inherently attractive because of its primary rather than its secondary meaning"; and that although the effect of the defendant's conduct had not been to deprive the plaintiff of any customers, or to affect its standing with investors or wholesalers, or to affect the worth of the name outside Massachusetts, where the name of the defendant's store had never reached, nevertheless the defendant had in the past and was likely in the future to confuse some average customers into believing that they are dealing with the plaintiff's chain, although so far as appeared such customers have so far not been given inferior goods or services, with the result that "to date they have not been injured by their confusion nor has plaintiff's reputation been affected by being associated with inferior goods or services." Hence the court concluded that although the defendant had caused some persons in Massachusetts to be confused, since their trade had not been diverted and since the "defendant's services have not been and are not likely to be inferior to plaintiff's such damage was merely nominal."

But the court went on to say: "One other effect of defendant's conduct demands special notice. Defendant to some extent diluted the value of plaintiff's trade name within Massachusetts. Prior to defendant's advent the name carried to some actual or potential Massachusetts customers, retailers, wholesalers and investors the meaning that all supermarkets operated under that name belonged to plaintiff. Defendant's conduct has adversely affected that exclusive secondary meaning. The extent of the adverse effect is a more subtle question to which reference will be made later."

The memorandum opinion of the court below, however, does not subsequently contain any specific estimate of the monetary value of the dilution suffered by the plaintiff, and apparently that court did not consider such an estimate necessary, for referring to the matter of the amount in controversy later in the opinion the court found another adequate ground for its ultimate conclusion that the controversy was over a sufficient amount to support federal jurisdiction. It said: "But there remains one other aspect of the amount in controversy. Defendant has interfered with plaintiff's opportunity to expand its chain by opening stores in Massachusetts free of competition with other local stores by the same name and has created a situation where, if it now prevails, it will probably be able even to enjoin plaintiff from effectuating its plans to operate stores in Greater Boston under the name Food Fair. This interference and forestalling, unlike that considered in United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 101, 39 S.Ct. 48, 63 L.Ed. 141 and Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 420, 36 S.Ct. 357, 60 L.Ed. 713 occurred after plaintiff had acquired a reputation in Massachusetts, had done business with wholesalers here, had acquired official permission for one of its subsidiaries to do business here and had negotiated for the acquisition of enterprises here. Before defendant opened its store plaintiff had something more than a mere hope of doing business in Massachusetts. Plaintiff had a right to regard Massachusetts as the 'territory from which he * * * with the probable expansion of his business may reasonably expect to receive custom * * *.' Restatement, Torts, § 732. Cf. Sweet Sixteen Co. v. Sweet '16' Shop, 8 Cir., 15 F.2d 920. The right to protection in territories where one 'receives or with the probable expansion of his business may reasonably expect to receive custom' [Restatement, Torts, § 732] is protected by Mass.St.1947, c. 307 from dilution. And thus (to use the language familiar in federal jurisdictional law) the value of the object to be gained in this suit is the right to operate supermarkets in Massachusetts under the name Food Fair without being faced with a competitor in Brookline who has the same name and who probably would seek to enjoin

plaintiff's expansion. In view of the testimony that with 103 stores plaintiff earns at the rate of $2,700,000 annually, this right, it seems to me, could reasonably be thought to exceed $3,000. And I therefore conclude that this Court has jurisdiction to give relief to plaintiff."

■ The defendant as appellant complains of the foregoing on two principal grounds: It says that the possibility of the plaintiff's expansion into Massachusetts is too remote to support a finding of a jurisdictional amount in controversy, and it says that a finding of such an amount in controversy cannot be based upon future or contingent damages.

The defendant's first argument can be readily answered. There is undisputed testimony in the record, and the court below made findings in accordance therewith, that in addition to causing a subsidiary corporation to obtain registration to do business in Massachusetts as a foreign corporation, the plaintiff had several times in recent years negotiated for the acquisition of stores in Massachusetts, and although those negotiations for one reason or another had proved abortive, expansion into Massachusetts remained in the active contemplation of the plaintiff's officers. The foregoing evidence and findings clearly distinguish the case at bar from Pure Oil Co. v. Puritan Oil Co., D.C., 39 F.Supp. 68, reversed on grounds not here material, 2 Cir., 127 F. 2d 6, upon which the defendant heavily relies. For although that case is very similar to the one at bar, in it the court found that the plaintiff had given up its retail outlet in the state involved (Connecticut), was pursuing a program of territorial contraction, and had no present intention of resuming operations in Connecticut, wherefore the court found that the plaintiff's reexpansion into Connecticut was not [39 F. Supp. 74] "probable enough to give any substantial value to its Connecticut good will", and in consequence concluded that

the plaintiff had failed to sustain the burden of proof imposed upon it by the McNutt case, whereas in the case at bar the opposite is true.

■ And the foregoing disposes of the defendant's second contention also. It is not accurate to say that a finding of amount in controversy cannot be based upon future or contingent damages. It cannot be based upon a mere possibility of future harm, but it can be upon a present probability of such harm. The distinction to be observed is the familiar one between a probability and a possibility, not between present and future, or certain and contingent. This clearly appears in the opinion of Judge Clark, sitting as District Judge, in the Pure Oil case supra, with ample citation of authorities. Therefore the finding of a probability of future harm to the plaintiff from the acts of the defendant warrants the ultimate finding of an amount in controversy adequate for federal jurisdiction.[2]

## II. Merits.

■ The parties agree, and it seems to us clear, as it seemed to the court below, that Massachusetts law governs. And we think that the applicable Massachusetts law is embodied in Mass.G.L.(Ter.Ed.) c. 110 § 7A, inserted by Mass.St.1947, c. 307, which provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trademark shall be ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."

The defendant first contends that to apply the above statute in the case at bar would give it retroactive effect for the reason that it became effective by its terms on August 1, 1947, whereas the defendant was incorporated over three months earlier. The short answer to this contention is that

2. We pass consideration of the possibility of a narrower rule applicable to this aspect of the jurisdictional question in cases like Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 and McNutt v. General Motors, Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, in which an element of comity enters for the reason that the injunction sought is against action by a state official. See 1 Moore, Federal Practice 529 et seq.

the wrong complained of is not the adoption of the name Food Fair, Inc. by the defendant corporation, but the use by that corporation of the name Food Fair for its supermarket in Brookline, and its use of that name did not occur until the defendant opened its market in December 1947, some three months after the effective date of the statute.

■ Furthermore the defendant contends that federal courts ought not to attempt to construe the Massachusetts statute in advance of its construction by the Massachusetts courts, but should decline to exercise jurisdiction in accordance with the rule of Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; City of Chicago v. Fieldcrest Dairies, Inc., 316 U. S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L.Ed. 1424; A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L. Ed. 873. We do not agree. Since decision of the case at bar does not require this or any other federal court "to determine or shape state policy governing administrative agencies", or entail "interference with such agencies or with the state courts", and since we are unaware of any "public policy or interest which would be served" by our withholding from the plaintiff the jurisdiction conferred by Congress upon the federal courts, it seems to us clear that the rule of Meredith v. Winter Haven, 320 U. S. 228, 64 S.Ct. 7, 88 L.Ed. 9 applies instead of the rule of the cases cited by the defendant.

■ Moreover the defendant seems to contend that the above Massachusetts statute, in spite of the scope of its terms, gives the plaintiff no right to relief because in Greater Boston its name has acquired no secondary meaning signifying its stores and hence there cannot possibly be any confusion as to source with respect to the goods sold by the defendant, which, it says, is an essential element of any cause of action under the statute. This contention is obviously without merit for the reason that the court below categorically found on adequate evidence that "As a result of plaintiff's use the combination Food Fair has now acquired a secondary meaning sufficient to deserve protection as a trade name. It signifies local retail super-markets operated by plaintiff", and further that "This identification is made not only by persons residing outside Massachusetts but by an appreciable number of persons within Massachusetts." In addition the statute under consideration provides that dilution of a trade mark or trade name is a ground for injunctive relief in cases of trade mark infringement or unfair competition "notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."

■ The defendant's further contention that the words Food Fair are not susceptible of appropriation because they are generic deserves only slightly more extended consideration. It is true that both words involved are generic. But, as we have had occasion to observe before, a trade mark is not to be resolved into its component parts, and each part analyzed separately in cases of this sort. Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 1 Cir., 165 F.2d 549, 552. Considered together the words involved may be relatively weak, but we do not think that they are by any means too weak to deserve the protection given them by the court below. This seems to us clear, and brings us to the question presented by the plaintiff's appeal, that is, whether the relief afforded is adequate.

■ Traditionally "The essence of equity jurisdiction has been the power of the Chancellor [i.e. the trial court] to do equity and to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754. Hence as an appellate tribunal we are loath to interfere with the scope of the injunctive relief afforded. Nor do we feel inclined to do so for the reason that at the moment the parties are not in direct competition and such relatively minor confusion as now exists, it seems to us, can be obviated by the expedients required by the decree as it stands. Perhaps this may not always be so. Should the plaintiff expand its chain into Massachusetts and the parties come into direct competition, then it may be that the relief granted would not give the plaintiff ade-

quate protection. But it will be time enough to consider this question when it arises, for the parties are not irrevocably bound by the decree as it stands. If circumstances change the court below is open to the plaintiff to seek modification of the present decree under the principle enunciated in United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999, in which Mr. Justice Cardozo, speaking for the court, said that even when power to modify a decree of injunction has not been reserved therein, that power nevertheless exists "by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need", and then, after citing cases, continued: "The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative * * * a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." See also S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, 177.

The decree of the District Court is affirmed.