## KATZ DRUG CO. v. KATZ.
### No. 14205.

United States Court of Appeals
Eighth Circuit.
May 8, 1951.

Paul R. Stinson, Kansas City, Mo. (Thomas S. McPheeters, Sr., Thomas S. McPheeters, Jr., Bryan, Cave, McPheeters & McRoberts, all of St. Louis, Mo., Lawrence R. Brown, and Stinson, Mag, Thomson, McEvers & Fizzell, all of Kansas City, Mo., on the brief), for appellant.

Roy A. Lieder, St. Louis, Mo. (Joseph J. Gravely, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Katz Drug Company, a Delaware corporation owning and operating a chain of departmentalized retail stores referred to as super drug stores under the name "Katz" and "Katz Drugs" and "Katz Drug Stores" used by it spelled out in words and sym-

bolized in pictures of cats continuously since 1914, brought this unfair competition action in 1946 against Meyer Katz of St. Louis, Missouri, to enjoin him from operating his neighborhood drug store in St. Louis, Missouri, under the name Katz Drugs or Katz Drug Store. The plaintiff started and built up its business in Kansas City, Missouri, and later opened and operated stores in Kansas City, Kansas, St. Joseph, Missouri, Des Moines and Sioux City, Iowa, and Oklahoma City, Oklahoma. It opened its first store in St. Louis in November, 1936. The defendant alleged that he established his neighborhood drug store business in St. Louis under his own name of Katz early in 1933 and continued with full right to do so and he denied that he was guilty of unfair competition and that plaintiff was entitled to injunction against him.

On the trial of the action the court found the unfair competition issue against the plaintiff and dismissed its complaint at plaintiff's costs. The court concluded that the defendant Meyer Katz had established his neighborhood drug store in St. Louis in 1933 under the name of Katz and Katz Drugs, using a picture of a cat or cats, nearly four years before the plaintiff corporation started operating its first super drug store and using the name and cat pictures in connection therewith in St. Louis late in 1936. That the plaintiff extended its chain of stores into St. Louis from its original operation in Kansas City, Missouri, with full knowledge of defendant's established neighborhood drug store business and his use in that business of his surname Katz and the cat pictures. It further appeared to the court that the defendant Meyer Katz had established his neighborhood drug store business under his own surname of Katz in good faith in natural course soon after he had become a qualified pharmacist, without knowledge of the plaintiff's use of the name and, except that the defendant has used and continues to use his own surname Katz accompanied by pictures of cats in his neighborhood drug store business, he has not attempted to obtain money or other ad-

vantage from the plaintiff or to palm off his goods as those of plaintiff or to ride on plaintiff's reputation. There is no evidence that he has obtained any of plaintiff's business or customers. Although the court recognized that some confusion results from the simultaneous operation in St. Louis of the several Katz super drug stores and the little Katz neighborhood drug store, it did not find that the plaintiff sustained any substantial damages or that any loss of business by it was imminent, and plaintiff did not make claim to any. It appeared to the court that in the year 1933 the defendant Meyer Katz was within his rights in then establishing and carrying on his neighborhood drug store under his own name of Katz spelled out in letters and also symbolized in pictures of cats; that at that time the plaintiff had not established a secondary meaning for its trade name and symbols in the trade area of St. Louis; that its trade name was not then known to the St. Louis public nor identified by it with any super drug stores of the plaintiff. The court held that the subsequent establishment of the Katz super drug stores in St. Louis during and following 1936 and the very great expenditures in advertising them and identifying them by words and symbolic cat pictures with the Katz name did not operate to extinguish the defendant's right to his business and trade name established before the plaintiff opened any stores in St. Louis, nor to confer upon the plaintiff a right to an injunction against the defendant's continued operation of his business as established in St. Louis under the Katz name. The opinion of the court containing its findings, conclusions and direction for judgment dismissing the complaint of the plaintiff is reported in full, 89 F.Supp. 528. Katz Drug Company, the Delaware corporation, appeals to reverse the judgment which was entered in accordance with the opinion.

It contends here, as it did in the trial court, that "in truth and fact" in March, 1933, when Meyer Katz established his drug store in St. Louis under the name Katz Drugs and Katz Drug Store, using pictures

of cats, St. Louis was already "within the normal field of plaintiff's expansion" and therefore the plaintiff was already in St. Louis, notwithstanding it had no stores or retail business there, and so was first and prior to Meyer Katz in the use and right to the use of the name Katz and symbolic cats to identify a drug store business in St. Louis.

In its holding to the contrary that plaintiff's trade name had no secondary meaning in St. Louis in 1933 and that plaintiff was not entitled to the injunction it prayed for, the court recognized that the law applicable was that of Missouri but as it found no Missouri state decision controlling the particular facts it rested decision on consideration of the federal cases, including those in the Supreme Court and in this court. It distinguished and considered inapplicable all of those cases cited and relied on by the plaintiff in which injunction was granted against appropriators of trade names who had acted in bad faith in making the appropriation. There was no bad faith nor "any design inimical to the interest of the plaintiff" in the adoption by Meyer Katz of his surname as the trade name of his drug store business in St. Louis. As the court found on sufficient evidence, the defendant could not have taken any benefit of reputation or good will of plaintiff in St. Louis in 1933 because at that time the plaintiff had not opened a store or done any substantial advertising or selling in St. Louis. According to his testimony defendant knew nothing of plaintiff or the trade name it used in the markets where it traded more than two hundred and fifty miles away from St. Louis. He worked his way in his youth to acquire his education as a pharmacist and when he became qualified and set up his own neighborhood drug store business in St. Louis, he put his own name on it as he had long intended to do. That course of conduct on his part refuted the inference that he had any intention to engage in unfair competition with plaintiff.

The court also fully recognized the principle that infringement of trade name and unfair competition may be enjoined where it is resorted to to forestall or unfairly profit from anticipated and naturally to be expected expansion of an established business into new market areas where its reputation and trade name have preceded it. It analyzed and discussed the cases in which protection has been granted against such unfair competition, but the court observed that "the concept of a market area into which a given business may normally expand is difficult at best" and on the particular facts and circumstances of this case it concluded that in 1933 St. Louis was not in fact a market area within the normal course of the expansion of the business of the plaintiff, located as that business was at a long distance from St. Louis, and that defendant in St. Louis neither knew nor had reason to anticipate such an expansion and that there was no evidence that the plaintiff in 1933 had any reputation (in St. Louis) of which defendant, or any one, could have taken the benefit by adopting the plaintiff's name there, and that no sufficient grounds existed for issuance of an injunction against defendant.

The plaintiff cited in the trial court, as it does here, the recent case of Food Fair Stores v. Food Fair, D.C., 83 F.Supp. 445, Id., 1 Cir., 177 F.2d 177, which arose in the District of Massachusetts. There the dispute concerned the use of a trade name for retail super markets and injunction issued against defendant's use of plaintiff's trade name for a retail super market in Brookline, Massachusetts, notwithstanding that defendant adopted the name before plaintiff opened any of its stores in the state of Massachusetts. The two opinions in that case contain comprehensive discussion and citation of authority on the modern law of unfair competition, and the opinions and cases cited were considered by the trial court in reaching its decision in this case without any expression of disagreement as to the law laid down. But different results were reached because the cases were different as to the controlling principle, notwithstanding the coincidence of some of the facts. In the Food Fair case the court below categorically found on adequate evidence that "As a result of plain-

tiffs' use the combination 'Food Fair' has now acquired a secondary meaning sufficient to deserve protection as a trade name. It signifies local retail super markets operated by plaintiff and this identification is made not only by persons residing outside Massachusetts but by an appreciable number of persons within Massachusetts." But in the present case the court hearing the evidence was convinced that the Katz name had not acquired secondary meaning in St. Louis when defendant applied it to his drug store.

The name Katz involved in this case is a family name and was not selected and appropriated as was the combination "Food Fair." Furthermore, the defendant in the Food Fair case after appropriating the trade name in issue, applied it to a store of the same general character and apparently patterned after the stores operated by the plaintiff, while defendant's neighborhood drug store in this case is so dissimilar from any of the retail super drug stores of the plaintiff that, as a practical matter, such confusion as does arise between them has been negligible. No one going into the neighborhood retail store of Meyer Katz thinks he is in one of the super drug stores identified with the plaintiff and its trade name. As conceded in argument, injury or damage to the plaintiff is potential rather than actual.

■■■■ It appeared to the trial court that although the cases of Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, and Sweet Sixteen Co. v. Sweet "16" Shop, 8 Cir., 15 F.2d 920, do not present the particular state of facts found to exist in this case, they do furnish a guide to the law to be applied. They settle in this circuit that there is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade with which the mark is employed and that as stated by the trial court, "An injunction [to protect exclusive enjoyment of trade name] must be limited in regard to territory."

See Cook Chemical Co. v. Cook Paint & Varnish Co., 8 Cir., 185 F.2d 365.

■■■■ We do not find that the trial court was in error in refusing to award injunction to the plaintiff against the use of its family name trade name in St. Louis by one having the same family name who applied to a very different kind of store established in a neighborhood of St. Louis long before the plaintiff opened any store in St. Louis and established therein the trade with which its mark is employed.

The appellant's contention that because its trade name has had secondary meaning in Kansas City, Missouri, it should be held to have the same meaning throughout the state of Missouri and therefore in the St. Louis area, appears to be without merit. It is in conflict with the concept of property in a trade name being exclusively a right appurtenant to an established business or trade with which the mark is employed. The exception appears to be the cases that rest on state statutes conferring state-wide protection. See e.g. ABC Stores, Inc., v. T. S. Richey & Co., Tex.Com.App., 280 S.W. 177.

■■■■ Appellant also contends that as matters stand between plaintiff with its very great investment in its St. Louis stores and in the trade name applied to them on the one hand, and the defendant Meyer Katz with his comparatively little neighborhood drug store on the other, it would be equitable to require defendant to use his name of Meyer Katz instead of "Katz." Confusion would thus be avoided and the expense would be small. Indeed, the plaintiff offers to bear it. But we do not hold that the trial court was in error in refusing to compel the defendant to take such action.

■■■■ The appellant in conceding as it must that Meyer Katz has not caused nor immediately threatened any substantial damage to plaintiff has stressed that his conduct constitutes a present nuisance and potential menace so as to justify the issuance of injunction against him. In this connection the record shows that at some time after the defendant Meyer Katz had

established his neighborhood drug store business under the Katz name and after the plaintiff's intended expansion into St. Louis had been publicized in the newspapers, the defendant entered into a contract for the use of his name for a proposed chain of drug stores in St. Louis, and over the period between April 6, 1934, when that contract was signed, and 1936, he and associates opened and operated several such stores pursuant to the contract under the Katz name. The plaintiff herein brought a suit in 1934 for injunction against the defendant herein and his associates in the enterprise alleging unfair competition. But that suit was dismissed at plaintiff's costs without prejudice and at the time of the trial of the present action against Meyer Katz in November and December of 1948, he had only the one neighborhood store, now at Delmar and Union Avenue, and no one had any right derived from him to use the name of Katz in any business. He testified that he had not discussed borrowing money from anybody and had no plans for expanding his store. In that situation, the past transactions and the suit based on the contract of 1934 were not relevant and threw no light on the question as to the plaintiff's right to injunction in this case. The court was not in error in so treating them.

On the whole record we think that the findings which the trial court made of the facts which it inferred from the evidence justified the refusal of the injunction and the dismissal of the plaintiff's action. Being convinced that the defendant had not trespassed upon a trade name that had acquired a secondary meaning in St. Louis at the time defendant established his little business there and that defendant's use of his own name in that area was rightful and without "any design inimical to the interest of the plaintiff", the court carefully discriminated and distinguished the case from those in which a different state of facts called for a different judgment. The findings were not clearly erroneous and may not be disregarded here.

The denial of the injunction and dismissal of plaintiff's action settled no more than that on the facts as they appeared to the court at the trial and were found by the court, the plaintiff was not shown to be entitled to injunction. But there is nothing in the trial court's opinion and judgment to imply that the plaintiff would not be entitled to injunction upon a showing of facts subsequently occurring to justify its issuance. The judgment fully recognizes that the plaintiff's trade name has now acquired secondary meaning in St. Louis and means the super drug stores operated by it in St. Louis, excepting in the local neighborhood of Meyer Katz's store and there defendant should not be enjoined from using it as he was shown to be using it for his neighborhood store.

Affirmed.