## FOOD FAIR STORES, Inc. v. SQUARE DEAL MARKET CO., Inc.

No. 11599.

United States Court of Appeals
District of Columbia Circuit.

Argued May 19, 1953.

Decided July 2, 1953.

Mr. Cary McN. Euwer, Washington, D. C., with whom Mr. J. Edward Burroughs, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Bernard Margolius, Washington, D. C., with whom Messrs. Joseph B. Danzansky and Carleton U. Edwards, II, Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an unfair competition case, in which each party claims a superior right to the use of the name "Food Fair" in the operation of retail grocery stores in the District of Columbia and surrounding areas.

Plaintiff-appellant operates a chain of supermarkets in various states along the Atlantic seaboard. Since the opening of its first "Food Fair" store in Baltimore in 1935, its holdings have increased to 151 markets, almost all of which bear the name "Food Fair." Its first store in the Washington Metropolitan area was opened in nearby Virginia in 1946. Another was opened in Prince George's County, Maryland, in the following year, and a third in the same county in 1951. These three stores are styled "Food Lane" rather than "Food Fair." Plaintiff says it chose that name for use in this area to avoid confusion with the defendant's stores, all of which bear the name "Food Fair." Defendant's chain is comparatively small, and is concentrated in and around the District of Columbia. The first of its stores to bear the name "Food Fair" was opened in the District in 1936. Its first Maryland "Food Fair Super Market" was opened in Montgomery County in 1950. Another was added in Prince George's County in 1951.

In 1948, plaintiff brought action in the United States District Court for the District of Columbia to enjoin defendant's use of the name "Food Fair." Defendant counterclaimed to enjoin plaintiff from using that name in and around the District of Columbia.[1] After trial the District Court dismissed plaintiff's complaint, and in accordance with defendant's counterclaim enjoined plaintiff "from using * * * in any manner, including advertising * * * the name 'Food Fair' as a title, trade-name, or on or associated with merchandise sold * * * [by the plaintiff] in the conduct or management of any business within the confines of the Washington, D. C. Metropolitan area, which is defined as follows: The District of Columbia; Prince George's County, Maryland; Montgomery County, Maryland; Charles County, Maryland; Arlington County, Virginia; Loudoun County, Virginia; Prince William County, Virginia; Fairfax County, Virginia; specifically including the independent city of Alexandria, Virginia."

Plaintiff-appellant's principal contention in the trial court was that the words "Food Fair" had acquired a secondary

---

1. After defendant opened its first Maryland store, plaintiff filed a similar action in the United States District Court for the District of Maryland. Defendant moved in the court below to restrain plaintiff from prosecuting the Maryland action. The motion was granted and on appeal we affirmed. Food Fair Stores v. Square Deal Market Co., 1951, 88 U.S. App.D.C. 176, 187 F.2d 219.

484

meaning denoting plaintiff in the Washington area, prior to the time that defendant first used the same words. It appeared that on October 31, 1935, plaintiff opened a supermarket in Baltimore under the name "Food Fair," and thereafter it advertised in Baltimore newspapers and on Baltimore radio stations, whose messages may have reached the District of Columbia. It further appeared that defendant opened a grocery store under the same name in Washington some eighteen weeks later. The evidence was conflicting as to whether or how long before the opening of this store defendant had used the name "Food Fair," and as to whether defendant deliberately copied the name from plaintiff's Baltimore store. The trial court found as facts that "there was not any usurpation intentional or otherwise" and that "both the plaintiff and the defendant * * * hit upon the use of the name 'Food Fair' at approximately the same time * * *." The court further found that the words had acquired no secondary meaning denoting plaintiff in and around the District of Columbia. On this basis it held that "the plaintiff acquired no legal right with respect to the name in this area," and dismissed the complaint.[2] The court's opinion, 109 F.Supp. 637, does not contain express findings and conclusions relative to the counterclaim. But its judgment fills the void. The defendant is therein "decreed to have established a secondary meaning associated with it of the name 'Food Fair' and entitled to the sole and exclusive use of that name as between the parties to this action in the Washington, D. C. Metropolitan area as hereinafter more specifically defined." We think the District Court's findings of fact were amply justified by the evidence, and are adequate for purposes of review.[3]

Plaintiff-appellant's main contention on this appeal is that the District Court should at least have found plaintiff entitled to exclusive use of the name "Food Fair" in the Maryland counties adjacent to the District. It points out that it was indisputably first to make significant use of the name "Food Fair" in Maryland as a whole. And it claims that "significant use of a trade name within a state preempts the [whole] territory of that state for the prior user," whether or not the state includes some areas which are economically oriented to or integrated with urban centers in other states. It thus concludes that, because of its unquestioned priority in Baltimore, the District Court should have treated the disputed Maryland counties separately from the District of Columbia and awarded them to plaintiff. We think appellant's position is untenable. It is supported, to be sure, by a dictum of Mr. Justice Holmes in a concurring opinion in Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, to the effect that rights in trade marks are statewide.[4] But

2. As an alternative ground for dismissal, the court held that in any event the plaintiff "would be barred under the present circumstances * * * by virtue of its long acquiescence in an adverse use * * *." [109 F.Supp. 641] Plaintiff had challenged defendant's use of the name, without result, shortly after defendant opened its first "Food Fair" store in 1936. Thereafter it did nothing until after World War II, when it sought to buy out defendant, then sought to proceed against defendant before the Federal Trade Commission, and finally, in 1948, began this proceeding. We need not pass on this point.

3. Appellant argues that the court made no adequate findings of fact and conclusions of law in accordance with Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A., inasmuch as the counterclaim is not mentioned in the court's opinion, which it designated to serve as its findings and conclusions. But we think the court's judgment, taken together with the memorandum opinion, affords "a clear understanding of the basis of the decision below." Goodacre v. Panagopoulos, 1940, 72 App. D.C. 25, 110 F.2d 716, 718; cf. Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 1950, 183 F.2d 355; Huszar v. Cincinnati Chemical Works, Inc., 6 Cir., 1949, 172 F.2d 6. There is therefore no occasion to reverse for noncompliance with Rule 52(a). Compare Uline v. Uline, — U.S.App.D.C. —, 205 F.2d 870. In the instant case, the question as to secondary meaning is one of fact, and the finding on this point is "sufficiently specific to enable us to perform our task of review."

4. "I do not believe that a trade-mark established in Chicago could be used by a competitor in some other part of Illinois

Mr. Justice Holmes' view has not found general acceptance,[5] and we have no basis for thinking that it represents the law in the states bordering on the District of Columbia. Some of the territory of those states is commonly identified with the District, for purposes of retail trade and the like, as part of the Metropolitan Washington area. This accords with the economic reality of the situation, which we think must be controlling in the present context. Realistically, it is clear that the secondary meaning of the words "Food Fair" must be the same in the Maryland and Virginia counties adjacent to the District of Columbia as it is in the District itself, inasmuch as this meaning was established principally by means of advertising in Washington newspapers circulating generally throughout the area.[6] We therefore are not disposed to give state boundary lines the decisive significance which plaintiff would

now attach to them.[7] Cf. Terminal Barber Shops v. Zoberg, 2 Cir., 1928, 28 F.2d 807. On the record before us, the District of Columbia and the surrounding counties must be treated as a unit for present purposes. And as to this unit, appellant cannot seriously contest the District Court's finding of a secondary meaning in appellee.[8]

■ Appellant's final contention is to the effect that, since "Food Fair" is its registered trade mark for use on packaged butter and eggs, it should not in any event have been enjoined from that use of the words in the Washington area. But the fact of registration is immaterial in the present context. United Drug Co. v. Theodore Rectanus Co., 1918, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Griesedieck Western Brewing Co. v. Peoples Brewing Co., 8 Cir., 1945, 149 F.2d 1019. And the fact that, so far as the record shows, appellee has never used

on the ground that it was not known there. I think that if it is good in one part of the state, it is good in all. * * * If this view be adopted we get rid of all questions of penumbra, of shadowy marches where it is difficult to decide whether the business extends to them. We have sharp lines drawn upon the fundamental consideration of the jurisdiction originating the right." 240 U.S. at page 426, 36 S.Ct. at page 365, 60 L.Ed. 713.

5. 1 Nims, Unfair Competition and Trade Marks 653 (4th Ed. 1947). Some support is given to the Holmes view by Socony-Vacuum Oil Co. v. Oil City Refiners, 6 Cir., 1943, 136 F.2d 470 at page 475, and 2 Callmann, Unfair Competition and Trade Marks 990 (1st Ed. 1945). But see Jacobs v. Iodent Chemical Co., 3 Cir.,1930, 41 F.2d 637; Katz Drug Co. v. Katz, 8 Cir.,1951, 188 F.2d 696; Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., 4 Cir.,1918, 254 F. 553. Cf. Yellow Cab Transit Co. v. Louisville Taxicab & Transfer Co., 6 Cir.,1945, 147 F. 2d 407.

6. It is perhaps conceivable that there would be relatively little public confusion if, without any newspaper or radio advertising, separate retail chains were operated under the same name, one in the District and the other in adjacent counties. But given appreciable use of advertising by either chain, through media influencing the whole area, confusion

seems inevitable. This is tantamount to saying that the development of a secondary meaning in a descriptive trade name cannot then be confined to the political boundaries of the local community in which the enterprise is located.

7. Appellant did not contend for separate consideration of the District and the adjacent areas in the court below. On the contrary, it agreed to stipulate "that the Metropolitan area of Washington includes surrounding counties in Maryland and Virginia." This agreement was evidently intended to govern the disposition of the case. Moreover, the testimony of appellant's Executive Vice President abundantly recognized the necessity of treating Metropolitan Washington as a unit. See note 9, infra.

8. Appellant argues that the relief granted to appellee is invalid as extending beyond the relief sought in its counterclaim, in that the counterclaim referred only to Prince George's and Montgomery Counties in addition to the District of Columbia. But defendant's counterclaim also asked "for such other and further relief as to this court may seem meet and proper." and appellant makes no other attack on the trial court's definition of the Metropolitan Washington area, as set forth in its judgment. See note 7, supra. Under the circumstances, we think it was proper for a court of equity to include the additional areas. See Rule 54 (a), Fed.Rules Civ.Proc.

.the contested words as a trade mark on merchandise is not controlling. All parties agree in this case that the sale of packaged items bearing the label "Food Fair" in appellant's Food Lane stores in the Washington area tends to create public confusion as to whose the merchandise is or what connection, if any, appellee has with it.[9] There is no doubt that the injunction will create a serious operating problem for appellant.[10] But appellant itself provoked this result when it sought to enter an area in which, as it plainly knew, the words "Food Fair" had already become associated with another enterprise. We think the injunction issued by the District Court was proper. Its judgment will accordingly be

Affirmed.

---

9. Mr. Marcus, Executive Vice President of plaintiff-appellant, testified that they had named their three stores in the Washington area "Food Lane" rather than "Food Fair" in order to avoid "confusing the public." He further testified that for the same reason they had sought to make sure that plain paper bags were used in their Food Lane stores, rather than "Food Fair" bags. He then was asked, "And do you feel apart from the names of the stores that the purchase of eggs in a Food Fair carton in a Food Lane store may confuse and will confuse the purchaser of those eggs with a Food Fair store of the defendant?", to which he replied, "I think undoubtedly."

10. Mr. Marcus testified that "our merchandising policies are so integrated with our name that we just can't separate the two."