SHOPPERS FAIR OF ARKANSAS, INC., et al., Appellants,

v.

The SANDERS CO., Inc., Appellee.

No. 17220.

United States Court of Appeals
Eighth Circuit.

March 9, 1964.

C. Randolph Warner, Jr., Fort Smith, Ark., for appellants. Herbert J. Deitz, Myron Wiess, of Cole, Friedman & Deitz, New York City, C. Randolph Warner, Jr., of Warner, Warner & Ragon, Fort Smith, Ark., and Richard B. Teiman, New York City, on the brief.

Lem C. Bryan, Fort Smith, Ark., for appellee; Bryan & Fitzhugh, Fort Smith, Ark., on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and MICKELSON, District Judge.

MICKELSON, District Judge.

This is an appeal from a judgment dismissing appellants' complaint after a trial to the court on the merits, reported at D.C., 207 F.Supp. 718. Jurisdiction is based upon diversity of citizenship and the amount involved. The appellants sought injunctive relief on the theory of unfair competition, claiming that appellee infringed their trade name "Shoppers Fair" when it opened a retail supermarket grocery store in Fort Smith, Arkansas, under the name of "IGA Shoppers Fair". The appellee defended on the basis that the trade name "Shoppers Fair" had not acquired a secondary meaning as to appellants in the Fort Smith area; that the parties were not in competition with each other; and that the appellee adopted the trade name "IGA Shoppers Fair" in good faith without knowledge of appellants' prior use.

Appellant, Mangel Stores Corporation, hereinafter called Mangel, is the sole owner of the other named appellants. Appellant Shoppers Fair of Arkansas, Inc., had not yet commenced to do business in Arkansas. The other Shoppers Fair appellants were actively engaged in business. Mangel has been opening new Shoppers Fair stores in various states since 1956. Each Shoppers Fair has in-

cluded in its full corporate name its geographical location by city or state. The stores are discount department type businesses located in suburban shopping centers. They sell what are known as "hard" and "soft" goods, i. e., ready-to-wear clothing, appliances, hardware, cosmetics, and a number of other nonperishable items. Mangel does not advertise the Shoppers Fair stores on a national basis. Each store advertises locally through the use of newspapers, radio, television, and circulars. Mangel directs and has complete control over the local advertising. Each store emphasizes the name Shoppers Fair, although the name itself appears on very few items of its stocked merchandise. The other businesses located in the shopping centers are considered non-competing with the Shoppers Fair stores.

The Shoppers Fair store nearest Fort Smith is in Tulsa, Oklahoma, 138 miles distant, located in the Nathan Hale Shopping Center. In the same shopping center is a grocery store named Phelp's IGA Store. Shoppers Fair of Tulsa is typical of the operation of the other Shoppers Fair stores. It advertised extensively through the Tulsa newspapers, radio and television stations, and circulars. The circulars were part of a direct mail plan confined to the city of Tulsa. The other advertising media did reach into the Fort Smith area. Shoppers Fair of Tulsa has never used the Fort Smith advertising media, although there have been occasions when other Tulsa businesses have used such media. The Tulsa store opened for business on September 29, 1960. Shoppers Fair of Arkansas was incorporated in the state of Delaware on August 8, 1961, and filed an application to do business in Arkansas on August 11, 1961.

Appellee, The Sanders Company, Inc., was incorporated in the state of Arkansas in May, 1961, and on June 8, 1961, it began doing business as a retail supermarket grocery store in Fort Smith, Arkansas, under the trade name "IGA Shoppers Fair". "IGA" stands for "Independent Grocers Alliance", which maintains a central warehouse from which affiliated members agree to purchase their grocery merchandise in return for a reduced price realized from volume purchasing on the part of IGA. Approximately 95% of appellee's sales are in the normal grocery line, and the remaining 5% consists of cosmetics, drugs, and other small items carried to complete the line of merchandise of the ordinary grocery supermarket.

Mr. Robert Sanders, president of appellee, testified that he had never heard of "Shoppers Fair" prior to the time he selected the name "IGA Shoppers Fair" for his store. He further testified that a passer-by suggested to him that the pre-opening decorations of the store looked "just like a fair", and such suggestion, coupled with his previous intention of using the word "Shopper", is how the name "IGA Shoppers Fair" was chosen. IGA Shoppers Fair in Fort Smith is the only store operated by appellee. It advertised extensively through the Fort Smith advertising media. All printed advertisements had the letters "IGA" prominently displayed and usually in larger type than the words "Shoppers Fair". The vast majority of appellee's customers reside in Fort Smith.

The trial court found that there was no unfair competition on the part of the appellee, because the appellants' trade name "Shoppers Fair" had not acquired a secondary meaning as to the appellants in the Fort Smith trade area, and that no customer confusion was caused by the appellee's use of the trade name "IGA Shoppers Fair" in such area. The court further found that there were no grounds for injunctive relief on the basis that Fort Smith was located within appellants' future expansion area.

The first point urged by appellants on this appeal is that the trial court erred in finding that appellants' trade name "Shoppers Fair" had not acquired a secondary meaning as to appellants in the Fort Smith area and in finding that there was no confusion between the trade names of the parties.

■■ In that connection, appellants contend that the findings of fact as to secondary meaning and likelihood of confusion are matters of ultimate fact reviewable *de novo* on this appeal. This is not an accurate statement of the law. Rule 52(a) of the Federal Rules of Civil Procedure provides that:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

This rule has been interpreted to include inferences drawn from undisputed facts and documents. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The application of the rule in this circuit is stated in Hartford Accident and Indemnity Co. v. Shaw, 273 F.2d 133, 137 (8 Cir. 1959), wherein it was held:

"Findings of fact by the trial court in cases tried to the court shall not be set aside unless it is clearly demonstrated that they are without adequate evidentiary support or were induced by an erroneous view of the law." (citations)

"In considering the question of the sufficiency of the evidence we are required to give the prevailing party the benefit of all reasonable inferences which can be drawn from the evidence." (citation)

■ The trial court found that: " 'Shoppers Fair' has acquired a secondary meaning limited to the Tulsa trade area and other trade areas, which areas do not include Fort Smith." The evidence showed without dispute that the appellants' store nearest Fort Smith was in Tulsa, some 138 miles distant. It had been in operation less than nine months prior to the opening of appellee's IGA Shoppers Fair. Its advertising was conducted on a local level rather than a national level. It is true that some of the advertising directed to the customers in the Tulsa area was received in the Fort Smith area, but mere advertising, in and of itself, as carried on in this case, is not dispositive of the question of secondary meaning. We believe that the case of Liberty Mutual Ins. Co. v. Liberty Ins. Co. of Texas, 185 F.Supp. 895, 903 (E.D.Ark.1960), succinctly states what is necessary to establish a secondary meaning:

"However, a name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods and services may become so associated in the public mind with such goods or services that it serves to identify them and distinguish them from the goods or services of others. When such an association exists, the name, mark, or symbol is said to have acquired a 'secondary meaning,' in which the original user has a property right which equity will protect against unfair appropriation by a competitor." (citations) "A trade-mark or a trade name may have acquired a secondary meaning in one locality but lack such a meaning in another." (citations)

The district court's finding of no secondary meaning as to appellants' trade name in the Fort Smith area is based on substantial evidence and is therefore not clearly erroneous.

■ The trial court further found that " * * * there has been no confusing similarity by the defendant's use of the trade name 'IGA Shoppers Fair' in the Fort Smith trade area." As heretofore stated, the evidence showed that the Tulsa and Fort Smith stores were 138 miles apart. The appellants were engaged in the operation of discount department stores, handling principally "hard" and "soft" goods, while the appellee was engaged in the operation of a retail supermarket grocery store, i. e., they were not in competition with each other to any appreciable degree. The appellee's use of the words "Shoppers Fair" was prefixed and distinguished by the letters "IGA". "IGA" is a well known trade name which has acquired a secondary meaning in the Tulsa and Fort

Smith trade areas. The appellee adopted its trade name "IGA Shoppers Fair" without knowledge of appellants' prior use of their trade name "Shoppers Fair." There is no evidence that either appellants or appellee have lost sales because of any claimed confusing similarity by appellee's use of the trade name "IGA Shoppers Fair" in the Fort Smith trade area. It is true that any one of the above factors would probably not be sufficient, in itself, to preclude a finding of no likelihood of confusion, but all of them together appear to preclude any such finding. It does appear from the record that some inquiries were made of the appellants in Tulsa by customers and salesmen as to the possible connection between the appellants' store in Tulsa and the appellee's store in Fort Smith, but such inquiries would hardly be justification for the trial court finding that there was customer confusion regarding the two trade names, especially in the absence of any evidence of loss of sales by either of the two stores because of any such confusion. Appellants also point to an instance where the Rockwood Chocolate Company of Brooklyn, New York, billed Mangel, as the parent corporation of Shoppers Fair, for candy sold to the appellee. The Fort Smith food broker who took the order testified there was no confusion on his part, and that the erroneous billing was an error of the candy company. Furthermore, we are here concerned with customer confusion and its likelihood in the Fort Smith area. We believe that the finding of the trial court on this point is in conformity with the Restatement, Torts, sec. 728, comment a:

> "The ultimate test of whether or not there is a confusing similarity between a designation and a trademark or trade name which it is alleged to infringe is the effect in the market in which they are used. * * In any event, the issue is whether an appreciable number of prospective purchasers of the goods or services in connection with which the designation and trade-mark or trade name are used are likely to regard them as indicating the same source. That a few particularly undiscerning purchasers might be so misled is not enough."

The finding of no confusing similarity is based on substantial evidence and is therefore not clearly erroneous.

The second point urged by the appellants is that the trial court erred in not granting injunctive relief on the basis that the appellants are entitled to protection in the area of their normal business expansion, which includes the Fort Smith area. This theory is based on a future likelihood of confusion that would arise at the time when the prior user of the trade name actually expands into the trade area of the junior user.

The trial court found that Mangel had incorporated Shoppers Fair of Arkansas "with an end in view of locating a store either in Little Rock or Fort Smith" and had made a thorough investigation of each location. The court further found that The Sanders Company, Inc., adopted the trade name "IGA Shoppers Fair" in good faith without knowledge of the prior use by appellants of the trade name "Shoppers Fair".

The finding of planned expansion by appellants into Arkansas is not disputed. Mr. Robert Sanders testified that he adopted the trade name "IGA Shoppers Fair" without any knowledge of appellants' prior use of the trade name "Shoppers Fair". He explained the manner in which appellee's trade name was selected. His testimony was uncontroverted and was accepted by the trial judge. Rule 52(a) states that due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses.

Appellants maintain that good faith is not material where the question relates to the protection of the area of normal business expansion. In the case of Katz Drug Co. v. Katz, 89 F.Supp. 528 (E.D.Mo.1950), it is stated at page 534:

> "A number of cases have been cited by plaintiff's counsel in support of

the field of natural expansion theory. It is readily seen that these cases do not require the plaintiff to show competition or loss of trade in order to obtain injunctive relief; but it is also apparent that in these cases there was present a showing of one of the following facts: either (1) that the junior appropriator adopted the senior user's mark with a 'design inimical to the interests' of the latter, that is, adopted it in bad faith; or (2) that the senior user, at the time of the adoption of the mark by the junior user and in the territory in which the junior user employed the mark, had something variously denominated by different courts as 'secondary meaning', 'good-will', or 'reputation'." (citations)

This case was affirmed at 188 F.2d 696 (8 Cir. 1951). In Food Fair Stores, Inc. v. Lakeland Grocery Corp., 301 F.2d 156, 162 (4 Cir. 1962), it is stated:

"The existence or non-existence of good faith on the part of the second user of the trade name is a powerful factor in determining whether the name is entitled to protection in an area to which the business it identifies has not actually expanded. Indeed, it is pointed out in Nims on Unfair Competition and Trademarks, Section 218b, page 649, that to some extent the emphasis of the inquiry has been shifted in determining whether a trademark or a trade name is entitled to extra-territorial protection, so that in some cases much more stress is placed upon the question of good faith and much less on the extent to which the name is known in a given area." (citations)

This decision appears to be in accord with the Restatement, Torts, sec. 732:

"In each case the issue is whether, in the territory in which the similar designation is used, there are or are likely to be a considerable number of prospective purchasers of the goods or services in connection with which the trade-mark or trade name is used, who are likely to be misled by the similarity. On this issue, the good or bad faith of the alleged infringer is an important factor."

In Food Fair v. Lakeland, supra, injunctive relief was granted because the court found an intentional appropriation of the first user's trade name. The decision is particularly significant in light of the earlier case of Food Fair Stores, Inc. v. Square Deal Market Co., Inc., 109 F.Supp. 637 (D.C.1952), involving the same plaintiff, wherein it was found that the junior user did not intentionally or otherwise copy the plaintiff's trade name, and that the plaintiff's trade name had not acquired a secondary meaning as to the plaintiff in the area where the defendant-junior user's stores were located. The court dismissed the complaint on the basis that the plaintiff had not acquired a legal right to the name in that area and granted the defendant injunctive relief on its counterclaim. The judgment was affirmed at 93 U.S.App.D.C. 7, 206 F.2d 482 (D.C.Cir.1953).

In the instant case, the trial court found that the junior user was not guilty of bad faith in adopting the trade name "IGA Shoppers Fair", and that the appellants' trade name "Shoppers Fair" had not acquired a secondary meaning as to appellants in the Fort Smith area, and accordingly entered judgment dismissing the complaint.

Viewing the record as a whole, the findings of fact of the district court are based upon substantial evidence, and the applicable law was correctly applied.[1]

The judgment of the trial court is affirmed.

1. The court in its discussion at page 737 of 207 F.Supp. states: "However, this does not preclude the plaintiffs from injunctive relief at such time as their plans for expansion become a reality and they can show positive damages due to unfair competition arising out of defendant's operations in the Fort Smith trade area as 'IGA Shoppers Fair.'" The final judgment entered provides for the dis-

missal of the complaint and contains no reservation or qualification. Upon the basis of the court's opinion as a whole and the judgment entry made, we are convinced that the court intended to decide only the case submitted to it upon the record and that it made no adjudication upon what the result might be upon a different state of facts. In any event, our affirmance is limited to the judgment entry dismissing the complaint.