Howard A. Zeller, J.
Plaintiff, Victory Chain, Inc., which is a domestic corporation now operating a chain of over 80 retail grocery stores and supermarkets in 17 counties of central New York, instituted this action against defendant, William Rosenherg, an individual doing business as the ‘ ‘ Victory Supermarket ” at Florida, Orange County, New York, to enjoin and restrain defendant from using the names “Victory”, “Big Victory”, “Victory Super Market ”, or “ Big Victory Super Market ’ ’, and further from making representations in any manner which would tend to lead the public or suppliers to confuse the respective businesses of plaintiff and defendant. Plaintiff’s complaint also seeks an accounting of profits made by defendant while doing business under, any of the foregoing trade names.
Plaintiff is a wholly owned subsidiary of W. H. Dunne Company, which has operated a wholesale grocery business since 1909 in central New York, and in which area it opened its first retail grocery outlets in 1921, the retail stores being incorporated in 1922 under the name of “Victory Chain Incorporated ”, Plaintiff has always operated its retail stores under some form of the ‘ ‘ Victory ’ ’ designation including ‘ ‘ Victory ”, “ Victory Market ” and “Victory Super Market”. In 1942, plaintiff *384 operated 165 stores in 18 central New York counties, and had 14 stores in Ulster and Sullivan Counties, which adjoin Orange County to the north and northwest respectively. During that same year, defendant with his father-in-law and brother-in-law incorporated in the State of New York as “ Victory Super Market, Inc.”, and opened its “Victory” retail store in Orange County in the village of Florida, a community of approximately 1,400 people. The following map shows the locations in 1942 of plaintiff’s stores and the one in which defendant had an interest.

While defendant’s father-in-law lived in and owned property in the village of Florida prior to 1942, defendant himself was until then a resident of New Jersey. Defendant was unaware of plaintiff’s corporate name or operations, and selected the name of ‘ ‘ Victory ’ ’ for the Florida store corporation under the influence of the war years’ emphasis on that word. Since 1942, defendant has used the designations, “Victory”, “Victory Super Market ’ ’, and ‘ ‘ Big Victory Super Market ’ ’. It was as late as 1950 before defendant became aware of plaintiff’s existence, and even then he did not fully appreciate that any real use conflict existed.
Two ultimate facts clearly emerge. Plaintiff used the name ‘ ‘ Victory ’ ’ for more than 20 years prior to its use by defendant and defendant selected the same name innocently and with *385 out intent to trade on plaintiff’s name, credit or good will. However, there is such an identity in the names used and such a similarity in the nature of the trade engaged in by the parties that absence of bad faith on the part of defendant is not controlling. (Peerless Elec. Co. v. Peerless Electric, 206 Misc. 965; Rainbow Shops v. Rainbow Specialty Shops, 176 Misc. 339; Franklin Simon & Co. v. Bramley Blouses, 170 Misc. 844.) The controlling factors are priority of use and area of operations. “ Even if we assume that -the defendants acted in good faith, it is the general rule that, as between conflicting claimants to the right to use the same trade name or colorable imitations of one another, priority of appropriation determines the question. (Oneida Community, Ltd. v. Oneida Game T. Co., Inc., 168 A. D. 769.) ” (Chicken Koop v. Maxan’s Restaurant, 185 Misc. 226, 228, affd. without opinion 269 App. Div. 927; Neva-Wet Corp. v. Never Wet Processing Corp., 277 N. Y. 163, 173.) As plaintiff is not now operating in Orange County the question is presented whether Orange County is within the limited normal area of plaintiff’s expansion which equity will protect. (Hanover Milling Co. v. Metcalf, 240 U. S. 403; Food Fair Stores v. Food Fair, 83 F. Supp. 445, affd. 177 F. 2d 177.)
One indication of plaintiff’s growth tendencies is the fact that its gross sales in 1942 were approximately $6,000,000, with advertising expenses of $29,000, while the 1957 gross exceeded $31,000,000, with advertising expenses of over $330,000. Changed consumer demands and new marketing methods in recent years have resulted in plaintiff’s abandoning some of the ‘ ‘ neighborhood ’ ’ type stores and consolidating others into fewer but larger supermarket outlets servicing most of the same consumer areas as before with 85 stores at present.
Believing trade stamps to have some competitive advantages, plaintiff in 1953 secured a 22-county chain food store distribution franchise for S & H green stamps. This franchise covers the 17 counties plaintiff now operates in and 5 additional counties, including Orange County. Such a franchise is valuable both to its holder and to the sponsoring stamp company only when retail stores are distributing the stamps to customers. Thus, it is clear that not only did plaintiff have some obligation to enter the 5 additional counties, but also that both plaintiff and the stamp company considered these 5 additional counties, including Orange County, to be normal and practicable areas of expansion for plaintiff’s stores.
Further, plaintiff’s motor fleet distribution system is already servicing stores at Monticello, Liberty, and Woodbourne in Sullivan County, and at Ellenville and Kerhonkson in Ulster *386 County. These 5 locations are within 40 miles of defendant’s store at Florida, are within approximately 60 highway miles of the far reaches of Orange County, and all are on main highway routes leading into Orange County.
By defendant’s own estimate, his consumer area radius is between 20 and 25 miles. Both plaintiff and defendant recognize the great increase in automobile use and the development of improved highways as a key factor in both the growth of the modern supermarket, and the expansion of a given store’s consumer area. Using the 20- to 25-mile consumer radius which defendant testified his store enjoys, the southerly fringes of the consumer areas of plaintiff’s 5 stores mentioned overlap the northerly portion of defendant’s consumer area, and further highlight the proximity of plaintiff’s present operations to the area of its probable ultimate expansion into Orange County.
Considering the relatively short distance to any point in Orange County from plaintiff’s stores in Sullivan and Ulster Counties, today’s improved highways and the speed and facility of motor freight distribution and the other factors mentioned, it is concluded that Orange County is well within the limited normal area of plaintiff’s expansion. (Peerless Elec. Co. v. Peerless Electric, 206 Misc. 965, supra; Rainbow Shops v. Rainbow Specialty Shops, 176 Misc. 339, supra.) This conclusion is fortified when the geographic relation to the defendant’s store of plaintiff’s present 85 retail outlets is seen on the following map.

*387 Defendant’s contention that there is no actual present competition is not a valid defense in view of the provision of subdivision 3 of section 368-c of the General Business Law which states in part “ Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name * * * shall be a ground for injunctive relief * * * notwithstanding the absence of competition between the parties ’ ’. The overlap of consumer areas has been noted previously and an impingement must occur with press, radio and mail advertising. If real confusion of identity and public deception do not now exist, the likelihood is sufficiently imminent to invoke equitable relief. (New York World’s Fair 1939 v. World’s Fair News, 256 App. Div. 373; see Matter of Old Forge Recreation v. Enchanted Kingdom, 9 Misc 2d 150.)
Because of plaintiff’s priority of use of the name “ Victory ”, and the likelihood of .confusion of identity and public deception within the limited normal area of plaintiff’s expansion, plaintiff should be granted injunctive relief requiring defendant to cease and desist from using the word “Victory” alone or in any combination of words as a part of his trade name, in his advertising, or in goods’ labeling.
Some short time prior to 1953 plaintiff discovered defendant’s existence and his use of the phrase “ Victory Super Market ’ ’. But it was not until the Fall of 1953, and after procuring the trade stamp franchise for Orange County, that plaintiff requested defendant to discontinue the conflicting name use. Plaintiff thereafter again ignored the situation until 1957 when this suit was begun. The lapse of these four years alone under the circumstances disclosed here does not constitute laches on plaintiff’s part (Tiffany & Co. v. Tiffany Prods., 147 Misc. 679, affd. 237 App. Div. 801, affd. without opinion 262 N. Y. 482), but it is an indication that plaintiff did not consider that the infringement effects needed to be dealt with hurriedly.
In the meantime, defendant had diligently continued to build his business: The rate of defendant’s dollar volume growth compares favorably with that of plaintiff, and not only bespeaks of sound merchandising, but also of the valuable good will defendant has attracted to his “ Victory Super Market ” from a substantial portion of Orange County. In slightly over four months’ operation in 1942, defendant’s grocery store grossed ■$65,000, with an advertising budget of approximately $3,000, representing a projected annual gross of approximately $195,000, and an advertising budget of $9,000. In 1946, defendant bought out the other stockholders, dissolved the corpora *388 tion, filed a certificate of assumed name for himself as “ Victory Super Market” and has operated as a sole proprietorship to the present time under that designation. In July, 1957, defendant moved into new and larger quarters, and is now operating a modern supermarket with an annual projected gross of $1,800,-000, and an advertising budget of approximately $48,000.
As plaintiff’s 1956 annual report points out, the introduction of a trade name into a new trade area calls for an abnormally large advertising budget for a substantial period of time before that trade name’s good will is established. Defendant’s 16 years of advertising under the name ‘' Victory ’ ’ will certainly redound somewhat to the advantage of plaintiff upon its entry into Orange County. It is axiomatic that a large advertising budget over a comparatively long period of time will confront a merchant required to introduce a new trade name into the marketing area of his long-established store. In view of the foregoing, justice requires that the restraining provisions of the injunction should not become operative against defendant for 18 months from the date hereof.
In view of defendant’s good faith, plaintiff’s delay, the equities herein considered, and the implication of an abandonment of demand for an accounting found in the absence of its being urged, plaintiff’s request for an accounting of defendant’s profits should be denied. (87 C. J. S., Trade-Marks, etc., § 215; Franklin Simon & Co. v. Bramley Blouses, 170 Misc. 844, supra.)
No costs should be awarded. (Civ. Prac. Act, § 1477.)
This shall constitute the decision required by section 440 of the Civil Practice Act, and no findings of fact need be submitted.
Submit judgment accordingly.