**WIENER KING, INC., Plaintiff,**

v.

**The WIENER KING CORPORATION et al., Defendants.**

Civ. No. 75–1018.

United States District Court,
D. New Jersey.

Jan. 9, 1976.

Bain, Gilfillan & Rhodes, Newark, N. J., for plaintiff.

McCarter & English, Newark, N. J., for defendants.

## MEMORANDUM OPINION

LACEY, District Judge:

This action involves the respective rights of the parties to certain trade and service marks and the interaction of the common law of trademarks with the Lanham Act (15 U.S.C. Sec. 1051 *et seq.*).

Plaintiff, a New Jersey corporation (WKNJ), has its principal place of business in Flemington, New Jersey, where since 1962 it has operated a restaurant facility under the name "Weiner King," (N.B. "ei"), using the design "Weiner King" and a crown. It sues to enjoin the defendants from using within New Jersey the name "Wiener King," (N.B. "ie") and the design "Wiener King" and a crown in, on and at restaurants which will, when opened, specialize in selling the same product plaintiff sells, "hot dogs".

The defendants are as follows:

Defendant The Wiener King Corporation (WKNC) is a corporation organized under the laws of the State of North Carolina and has its principal place of business in Charlotte, North Carolina.

Defendant Operational Systems, Inc., is a corporation organized under the laws of the State of Delaware with its principal place of business in New Jersey.

Defendant Jed Associates is a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey.

Defendant Robert Alex is an individual residing at 6 Appletree Lane, East Brunswick, New Jersey, and is president of defendant Operational Systems, Inc.

Defendant Cary Alex is an individual residing at 25 Monroe Place, Brooklyn, New York, and is a principal in defendant Operational Systems, Inc.

Defendant Joseph Diaz is an individual maintaining a real estate practice in Bloomfield, New Jersey, and is the registered agent of defendant Jed Associates.

Defendant Frank M. Leo is an individual residing in Nutley, New Jersey, and is president of defendant Jed Associates.

Plaintiff's complaint alleges (Count I) that plaintiff is the prior user of the disputed trade and service marks, having first used them in 1962; defendant WKNC did not use its marks until 1970, in North Carolina; WKNC now proposes to enter into business in New Jersey, through the sale of franchises for restaurant facilities similar to plaintiff's, using as the name of such facilities the al-

legedly infringing marks, all with knowledge of plaintiff's pre-existing rights to the exclusive use of said marks; the other defendants are involved in the proposed franchising; and defendants' proposed action constitutes a false designation of origin and a false representation, and otherwise is in violation of plaintiff's rights under 15 U.S.C. Sections 1125(a) and 1126. Jurisdiction is claimed under 15 U.S.C. Sec. 1121.

The remaining counts claim "Common Law Unfair Competition" with jurisdiction under 28 U.S.C. Sec. 1338(b) (Count II); "New Jersey Unfair Competition" under pendent jurisdiction principles (Count III); "New Jersey Trademark Infringement" under pendent jurisdiction principles (Count IV); and "New Jersey Fraudulent Advertising" under pendent jurisdiction principles (Count V).

In addition to the injunctive relief sought, plaintiff seeks accounting of profits, costs, and cancellation of WKNC's federally registered marks, under 15 U.S.C. Sections 1064(a) and 1119.

Defendants' answer denied the material allegations of the complaint, including the averments of subject matter jurisdiction. The defendants WKNC, Jed Associates, Diaz and Leo also counterclaimed under the Lanham Act and under the common law, claiming plaintiff's Beach Haven "Wiener King" facility infringes WKNC's registered service mark.

This court has subject matter jurisdiction over the claim asserted in Count I of the complaint under 15 U.S.C. Sections 1121 and 1125(a), although not under Section 1126. *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954); and will, in the exercise of its discretion, assume jurisdiction over the remaining pendent state claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Before addressing the issues in the case at bar it is noted that the plaintiff and defendant WKNC are also contesting in the Patent and Trade Mark Office. Plaintiff there seeks to register its own marks and cancel WKNC's 1972 registrations. WKNC seeks concurrent registration, under which WKNJ would be granted use in Hunterdon County, New Jersey, and WKNC would be granted use in the balance of the United States. On November 7, 1975, these proceedings, having been consolidated, were stayed by the Trademark Trial and Appeal Board until this suit is concluded. It is further noted that the parties in this proceeding have suggested that this court deal with the cancellation and concurrent registration problems.

### Prior Proceedings

At the outset of suit, upon plaintiff's application, this court preliminarily enjoined defendants from using their mark in New Jersey within 20 miles of Flemington and within 20 miles of Beach Haven. At the same time, the parties were advised that this court saw as a critical issue the extent of plaintiff's trade territory wherein it was entitled to protection as a prior user of its mark. Accordingly, the parties were instructed to submit statistical data and other information to illumine this area of dispute.

Thereafter the parties pursued discovery, pre-tried the matter, stipulated numerous facts, and submitted the case to this court for final determination following submission of briefs and oral argument.

To expedite disposition of this matter I am placing this opinion into the record.

### The Facts

Most of the critical facts have been stipulated. The parties have also agreed that the court may consider as in-court testimony certain depositions and affidavits.

The parties also have tendered for the record certain statistical studies and reports purporting to show traffic flow in the Flemington, New Jersey, area; the tourist "draw" of Flemington; the business done—by customers' residences—by certain Flemington industries; and customer surveys at plaintiff's restaurants.

All of this material will be accepted in evidence. All of it has relevance, and is entitled to some weight and, of course, except as to plaintiff's questionnaires, hearsay objections were waived (Tr. Dec. 10, 1975, 57 *et seq.*).

■ As to the questionnaires—and customers' responses thereto—they are admitted over defendants' hearsay objection. *Id.*, 58. Plaintiff had actual customers indicate where they resided. What better way is there to ascertain where people who patronize plaintiff's restaurants reside? While it is true that a certain amount of facetiousness crept into a limited number of responses, the court is confident that the results can be relied upon to the extent that they reveal broad percentages and trends of use. There is no suggestion that customers from the vicinity of Flemington were induced to fabricate their responses to reflect they came from afar. On the other hand, as to the meaning and weight to be given to this evidence, it supports only the argument that people from various points, driving by, drew up and visited plaintiff's restaurant. Doubtless many if not all from the Flemington area went *to* plaintiff's restaurant. People from Bergen or Essex County or other remote points, so far as the evidence indicates, did not leave their homes for a snack at the Weiner King; no claim is made of such uniqueness of specialty as would induce this activity. At best, from plaintiff's point of view, while driving in the area, people stopped for the light meal plaintiff offers. Then, having been exposed to the "Weiner King" mark of identification, they now serve as means of carrying plaintiff's name home into their areas of residence. It is on this basis that all of plaintiff's data will be considered. *Cf. Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 683 (S.D.N.Y.1963); *and see* authorities cited in *Grotrian, Helferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975).

Insofar as the Roper poll is concerned, I find it of very little assistance in dealing with the issue presented here. Accordingly, it will be given little weight.

From the stipulated facts, and those developed by the submissions and generally uncontested, the following are adjudged to be critical.

Plaintiff was the first user but has never obtained federal registration for its mark, first used in Flemington, New Jersey, in 1962; plaintiff opened a second Flemington facility in 1967, first expanded beyond Flemington when it opened a facility in Beach Haven, New Jersey, in 1973, and opened a fourth facility, in Flemington, in 1975.

Defendant WKNC, second user, innocently adopted its mark in North Carolina in 1970, and obtained federal registrations by May in 1972; no opposition had been filed to such registration and by May 1972 WKNC had 11 "Wiener King" company-owned restaurants in operation. At oral argument WKNC's counsel stated there were now 61 restaurants open, 9 under construction, and 35 under site development, in 20 states. Many of these have come about, of course, after WKNC first learned of plaintiff's mark. Plaintiff has not sought, however, to enjoin any one of them until this suit was brought.

WKNC first learned in late 1972 of the incorporation of plaintiff in New Jersey in 1966 under the name Wiener King, Inc., and first learned in July 1972 of plaintiff's use on Highway 31–202 of the words "Weiner King" within a crown-shaped design. At this time WKNC had not yet come into, and, apparently, had not made plans to come into New Jersey.

After learning of plaintiff's use of its mark in Flemington, WKNC offered for sale, and advertised for the purpose of offering for sale, franchises throughout the United States, including New Jersey; and at least one such franchise has been sold in New Jersey, with defendants planning to operate it in Ramsey, New Jersey. Tr. Dec. 10, 1975, 67.

Plaintiff has advertised very little and then only in and near Flemington; and its first facility outside of Flemington,

opened in Beach Haven in August 1974, was opened with knowledge of WKNC's service mark registrations. Plaintiff has never actively advertised or solicited the sale of franchises for restaurants to operate under the name "Weiner King" or "Wiener King".

Other facts will be referred to in connection with the discussion which follows hereinafter.

Based upon the foregoing, plaintiff claims it is entitled to exclusive use of its mark throughout the State of New Jersey. Defendants, conceding plaintiff has "some rights in the mark 'Weiner King'," respond (Defts.' Factual Contentions):

> Plaintiff admittedly has some rights in the mark "Weiner King" and the territorial scope of these rights is defined by Plaintiff's actual trade area as it existed as of the dates of Defendant Wiener King Corporation's service mark registrations (1972). Since Plaintiff's history of operation was limited to Flemington, New Jersey, and its advertising minimal this actual trade area was properly only the town of Flemington, New Jersey. The professionally designed, conducted and analyzed Roper Organization study bears this out with the specific definition of trade area being no greater than that portion of New Jersey included within a fifteen-mile radius of Flemington.

Defendants add (Ibid.):

> Plaintiff is entitled to no rights for its limited use of "Wiener King" in Beach Haven, New Jersey since that use was not commenced until after the dates of Defendant Wiener King Corporation's service mark registrations. Nonetheless, the Roper Organization study shows that any hypothetical rights of plaintiff would be limited to Long Beach Island.

### Discussion

Involved here is the matter of concurrent use of trademarks, that is, the use of what is essentially the same mark by two parties to identify the same goods and services. The controversy here arises out of facts which show a prior user, WKNJ, which failed to register under the Lanham Act and confined its operating and advertising to a narrow geographical area, Flemington, New Jersey, contesting the right of a subsequent user, WKNC, which, having previously innocently adopted and federally registered its mark, now seeks to move into a trade area, New Jersey, which plaintiff claims as its own.

Defendant WKNC unquestionably was an innocent and "good faith" adopter when in 1970 it commenced business in North Carolina. Its expansion was rapid, and in ignorance of plaintiff's mark, until late 1972, by which time it had obtained federal registration of its mark. After learning of plaintiff's mark, WKNC continued to expand on a very substantial basis, and embarked upon a franchising program. Plaintiff took no steps to halt WKNC's activities until its expansion brought it into New Jersey. Only then was suit instituted. A careful balancing of the interests of the public and the parties, in the light of the facts and the somewhat uncertain state of trademark law related to concurrent use, is required to resolve the controversy which thus arises.

Plaintiff's federal claim is founded upon 15 U.S.C. Section 1125(a), which in pertinent part provides:

> Any person who shall . . . use in connection with . . . services . . . a false designation of origin, or any false description or representation, including words or other symbols . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

It should be noted at the outset that a cause of action under the above section is not dependent on possession of a federally registered trademark. *Potato Chip Institute v. General Mills, Inc.*, 333 F.Supp. 173, 179 (D.Neb.1971). "The misconceptions are obviously attributable

to the fact that section 43(a) is a part of the Trademark Act where, of course it does not logically belong." 1 Callmann, *The Law of Unfair Competition Trademarks and Monopolies,* Sec. 18.2(b) at 622 n. 26 (3d ed. 1967) (Callmann).

■ The common law of trademarks is a part of the law of unfair competition. 3 Callmann, Sec. 67.1 at 53. Basic to an analysis of plaintiff's rights under Sec. 1125(a) are *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) and *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918). At common law the exclusive right to a trademark rested upon appropriation and use. The Supreme Court in *Hanover* held that a prior user has exclusivity only within the geographical area of use, and that a subsequent good faith user without notice of prior use was entitled to the concurrent use in his own market, provided it is remote from the market of the prior user. Neither party in *Hanover* had a registered mark. The Court applied what it referred to as "common-law principles of general application", 240 U.S. at 411, 36 S.Ct. 357, under which, it stated, the doctrine of "priority" or "prior appropriation" was inapplicable. Thus the Court said (240 U.S. at 415, 36 S.Ct. at 361):

> In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant. (footnote omitted)

■ Two years later, in *Rectanus,* the mark involved was federally registered under the Trademark Act of 1881. Again the Court held that a prior user could not bar a subsequent user from using the mark in his own trading area. This rule of law has not been changed by the Lanham Act's provisions. *American*, *Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619 (5th Cir. 1963).

■ The next analytical step is the comparison of the competing marks. The test is likelihood of confusion. Thus, assuming the same market area (unlike *Hanover* and *Rectanus*), a trademark owner, having proved priority of appropriation and use, is afforded protection if the subsequently used mark would be likely to cause confusion of the source or origin of the goods or services involved. *Hanover Star Milling Co. v. Metcalf, supra,* 240 U.S. at 415, 36 S.Ct. 357.

■ There is no doubt that, within its trade or market area, plaintiff, as the prior user of "Weiner King", is entitled to protection against WKNC's "Wiener King". The marks are confusingly similar. The distinction between "ei" and "ie" is insignificant; it will cast no impression of difference upon the average patron of plaintiff's or defendants' restaurants. This is particularly so when the crown is considered. Not only do the marks appear the same. They are pronounced the same, notwithstanding the valiant effort by defendants' counsel, who would pronounce plaintiff's mark as "Wi'ner". *Grotrian, Helferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331 (2d Cir. 1975); *LaTouraine Coffee Co. v. Lorraine Coffee Co.,* 157 F.2d 115, 117 (2d Cir.), *cert. denied,* 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946); *accord, David Sherman Corp. v. Heublein, Inc.,* 340 F.2d 377, 380 (8th Cir. 1965). The two marks thus may not coexist in the same trade area; and plaintiff, as the first user, achieves exclusivity by virtue of its common law right to protection, a right not cut off by defendants' federal registration under the Lanham Act, even if said registration was validly obtained and is sustained. *United Drug Co. v. Rectanus Co., supra; Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614 (3d Cir. 1969). In this sense it can be said the Lanham Act did not change pre-existing trademark law. It is appropriation and

use, not federal registration, which gives rise to the right to a trademark. This is evident in the Lanham Act itself which provides for the preservation of existing rights. 15 U.S.C. Sec. 1051.

Defendant Wiener King Corporation, moreover, has not overlooked the inherent confusion. This is implicit in its application to the Patent and Trade Mark Office for concurrent registration. It is explicit in defendants' counterclaims which assert that, with knowledge of defendants' federal registration of WKNC's service marks, plaintiff used at its Beach Haven facility its service mark, which "uses constitute infringement of defendant Wiener King Corporation's service mark rights and cause likelihood of confusion, deception or mistake, all in violation of 15 U.S.C. Sec. 1114."

Of course, there has as yet been no *actual* confusion demonstrated because defendants have not yet opened a restaurant in New Jersey. It is plaintiff's purpose in bringing this action to preclude them from doing so. Given the likelihood of confusion as described, we must now consider the geographic reach plaintiff's protection should be given, that is, what is plaintiff's trade area within which it can enjoy the exclusive use of its mark?

■ Plaintiff's first position, seemingly fashioned from Mr. Justice Holmes' concurring opinion in *Hanover,* 240 U.S. at 424, 36 S.Ct. at 365, is that something akin to a *per se* rule operates to make a market area co-extensive with the state's boundaries. Holmes assumed that every valid mark is entitled, at a minimum, to state-wide protection and that if a mark "is good in one part of the state, it is good in all." This rule has been rejected by numerous courts, including this Circuit. *Jacobs v. Iodent Chemical Co.,* 41 F.2d 637 (3d Cir. 1930); *Burger King, Inc. v. Hoots,* 403 F.2d 904 (7th Cir. 1968); *Food Fair Stores, Inc. v. Square Deal Market Co.,* 93 U.S.App.D.C. 7, 206 F.2d 482 (1953), *cert. denied,* 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 426 (1954); *Katz Drug Co. v. Katz,* 89 F.Supp. 528 (E.D.Mo.1950), *aff'd,* 188 F.2d 696 (8th Cir. 1951). Nor is plaintiff's contention strengthened by its having obtained a New Jersey registration. N.J.S.A. 56:3–13.1 *et seq.* In the first place, there is considerable doubt about the validity of the registration, as is best evidenced by the various corrective steps taken by the plaintiff itself after its initial effort at registration. Beyond that, however, there is nothing in the state statutory fabric which can be read as overriding the *Hanover-Rectanus* doctrine. To the contrary, N.J.S.A. 56:3–13.13 expressly preserves this common law rule.

■ We turn next to plaintiff's argument that its statistical and survey data show its trade area to be statewide. The starting point in this analysis is that the actual locale of plaintiff's business was, from 1962 to 1974, Flemington, New Jersey, with no expansion until 1974 when it opened a seasonal restaurant in Beach Haven, New Jersey. Conceptually, plaintiff is entitled to areas of predictable potential expansion, zones of advertising, and so-called "reputation zones". *See Sweetarts v. Sunline, Inc.,* 436 F.2d 705 (8th Cir. 1971); and authorities cited in Comment, *The Scope of Territorial Protection of Trademarks,* 65 Nw.U.L. Rev. 781 (1970). Consideration of these factors follows.

*Expansion:* Plaintiff has the right to have considered its entitlement to protection of its mark in what Callmann calls a "zone of potential expansion". 3 Callmann, *supra,* Section 76.3(b)(2), 317. This is because a prior user, naturally enough, deserves such protection not only in the immediate area of its current physical plant but also within that area to which it can reasonably be expected to expand. *Cf. Hanover Star Milling Co. v. Metcalf, supra,* 240 U.S. at 420, 36 S.Ct. 357. To determine this "zone of potential expansion" with exactitude is impossible. We can only rely upon what has occurred and what is said to be planned.

■ Plaintiff, from 1962 to 1974, operated only two facilities, both in Flemington, and advertised only modestly,

again in the Flemington area. It opened its Beach Haven facility, a seasonal restaurant on the Jersey shore, only after having learned of WKNC's federal registrations. Plaintiff was thus content (or required) to maintain a small and locally oriented operation for some 13 years; and even now it does not claim it plans to open restaurants at sites in New Jersey other than Flemington (and Beach Haven). Accordingly, the expansion factor is given little weight in this trade area analysis.

*Advertising:* As has been mentioned, plaintiff's advertising has been negligible; and it cannot be said that plaintiff's trade area has been enlarged appreciably beyond the Flemington area by advertising.

*Reputation zone:* Plaintiff's claim to statewide protection rests largely upon this factor. 3 Callmann, *supra,* Section 76.3(b)(1), 312:

> Even without . . . advertising or other special efforts by its owners, the fame of a mark may extend beyond the immediate selling market. The area thus affected can be called its reputation zone. Modern progress in transportation and communication defies boundaries and renders static legal concepts obsolete. The traveler, who is introduced to an article unknown in his locale often "returns home and sings the praises of the article to his friends"; he indirectly opens a potential market at a point far distant from that directly solicited by the manufacturer. This is more the rule than the exception. . . . And to gourmets the world over, the name of a restaurant may become an international hallmark even without the aid of newspapers and radio. . . .

*Cf. 51 West 51st Corp. v. Roland,* 139 N.J.Eq. 156, 50 A.2d 369 (Ch. 1946) (Toots Shor Restaurant in New York— Toots Shores in Atlantic City); *see also Ambassador East, Inc. v. Orsatti, Inc.,* 257 F.2d 79 (3d Cir. 1958); *Stork Restaurant, Inc. v. Sahati,* 166 F.2d 348 (9th Cir. 1948).

Callmann treats as "probably anachronisms today" early cases which "proceeded on the rather unsophisticated assumption" that the trade area of a retail store, or theatre, or service station, was 50–70 miles. Callmann, supra, Secs. 76.-3(b)(1), 314. What then is plaintiff's "reputation zone" and what factors are to be considered in arriving at it?

One factor which, while seemingly extraneous, should be reviewed in light of decisional law, is the subjective motive of WKNC. It is true that while WKNC's original adoption of its mark was innocent and in good faith in that it was without knowledge of plaintiff's mark, WKNC's proposed entry into New Jersey cannot be said to be innocent in that sense. Indeed, a considerable amount of its natural expansion, and its franchising, came only after it learned of plaintiff's mark. There is some authority for concluding that this is a case of good faith adoption not bad faith expansion. *Tie Rack Enterprise, Inc. v. Tie Rak Stores,* 168 U.S.P.Q. 441 (TTAB 1970). However, *Tie Rack,* even assuming it to be correct on its facts, *cf. Hanover Star Milling Co. v. Metcalf, supra,* is not only not binding upon this court; it is readily distinguishable.

Reason and common sense compel the conclusion that the defendants are not seeking to trade upon or profit from the name and reputation of another, the plaintiff. Instead they seek to gain from their own goodwill, founded upon the use of "Wiener King" throughout a large part of the United States. To put it succinctly, this is not a "palming off" case where the subsequent user attempts to confuse the public into believing his product is that of the prior user.

Nor do we have here a gourmet restaurant run by a prior user whose patrons, out of a fondness for his unique menu and finely cooked food, can be expected to make their way to defendants' restaurants, thinking there to be similarly wined and dined. To put it baldly, these are "hot dogs" we are talking about, not Chateaubriand with Sauce Bearnaise.

Nor is there a claim made by plaintiff here that its reputation as a purveyor of "hot dogs" of excellent quality is likely to be tarnished or diminished by defendants' sale of an inferior product with inferior service. For all that the record shows, defendants' food and services are at least the equal of plaintiff's in quality.

Given all these negative factors, plaintiff is still entitled to protection of its mark in its reputation zone, and this notwithstanding WKNC's federal registration. *Cf. Mariniello v. Shell Oil Company*, 511 F.2d 853, 857–58 (3d Cir. 1975); ". . . Despite the adoption of a uniform federal registration scheme, local trademarks may be enforced by statute or common law unless conflict develops with a national trademark." In a footnote to this textual provision the Court of Appeals also stated (*Id.*, 858 n. 22):

> Even where collisions occur with federal trademark holders, the Act provides that earlier local use of identifying names may prevail over national trademarks within a circumscribed zone. 15 U.S.C. Sec. 1115(b)(5). See *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969); *John R. Thompson Co. v. Holloway*, 366 F.2d 108 (5th Cir. 1966).

*Cf. Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99 (7th Cir. 1970); *In re Beatrice Foods Co. v. Fairway Foods*, 429 F.2d 466 (C.C.P.A.1970).

What then is the measure of the reach of plaintiff's mark?

Plaintiff's reputation zone cannot be measured with mathematical exactitude. The assembled data, while illuminating and helpful, falls short of establishing conclusively the farthest reaches of plaintiff's trade area. Yet I can only rely upon what I have, and from such data derive inferences which represent my best effort to resolve this troublesome question.

█ Preliminarily, I take "trade area" to mean that geographical area from which plaintiff's customers are drawn through (a) awareness of plaintiff's facilities; and (b) resultant good will flowing from use of such facilities. Not surprisingly, given the highway location of plaintiff's one facility, and the unique location of another (at Turntable Junction), the nature of Flemington as a tourist attraction, and its draw as a business center for furs and cut-glass, plaintiff's customers come from almost all of New Jersey's twenty-one counties, and, as well, from Pennsylvania. Based upon the materials submitted at final hearing, it is certainly clear that the 20-mile radius I drew at a preliminary stage is inappropriate. It is also evident that, given New Jersey's status as a "corridor" state, and plaintiff's location on a well-traveled lane within this corridor, the evidence offered by plaintiff in this proceeding, while not of scientific authenticity and reliability, is entitled to some weight, and as the factfinder, I do accord it at least that weight which sees it as illustrative of the trend of plaintiff's business.

I am not unmindful of defendants' Roper study and its disparagement of plaintiff's evidence. Roper, however, overlooks the obvious; no one contends that the various materials submitted by plaintiff are 100% accurate. What is to be drawn from such evidence is that plaintiff's businesses in Flemington serve people throughout New Jersey and, presumably, having done so for several years, will continue to do so in the future. Indeed, as our population's mobility continues to increase, plaintiff's penetration of New Jersey predictably will become more marked.

█ I therefore conclude that plaintiff is entitled to claim as its trade area all of New Jersey. In so holding, I rely upon the aforementioned data, notwithstanding that it reflects a state of affairs post-May 1972, by which time WKNC had received its federal registrations. Data as of May 1972 was not available; however, I will presume that operations at the Flemington facilities were at that time substantially the same as depicted in the studies submitted.

The Beach Haven facility was opened after May 1972. However, in view of the disposition of the larger question, it follows that Beach Haven was within the plaintiff's reputation zone.

I likewise find that plaintiff is entitled to a zone of protection extending into Pennsylvania, to be measured by a radius of 40 miles from Flemington.

Defendants' contention of laches is without merit and their counterclaims are dismissed with prejudice. Plaintiff is entitled to an accounting, with costs.

■ In view of the disposition of this matter it is unnecessary to deal separately with the remaining counts of plaintiff's complaint. Where the Lanham Act is not the source of the right sued upon, state law applies. *Artype, Inc. v. Zappulla*, 228 F.2d 695 (2d Cir. 1956); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 540–41 n. 1 (2d Cir. 1956). In this case, however, the choice of law presents no real problems, since trademark use is accepted as a general common law requirement, with no discernible differences from jurisdiction to jurisdiction. Federal registration does not alter the basic common law requirement of use. The Lanham Act does not create the trademark right; it only recognizes the right acquired through use, *Radio Shack Corp. v. Radio Shack, Inc.*, 180 F.2d 200 (7th Cir. 1950); Vandenburgh, *Trademark Law & Procedure*, Section 2.10 (2d ed. 1968).

Both parties have suggested that the Lanham Act's cancellation and concurrent registration provisions be utilized by this court to expedite a conclusion of all litigation.

The beginning point in dealing with concurrent registration questions is Sec. 2(d) of the Lanham Act, 15 U.S.C. Sec. 1052(d).

. . . when the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the . . . place of use of the marks . . . concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (i) the earliest of the filing dates of the applications pending or of any registration issued under this chapter

. . . . .

Congress further provided in Section 2(d) of the 1946 Act: "In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to . . . place of use of the mark."

Congress further provided in Section 18 (15 U.S.C. Sec. 1068):

That in the case of the registration of any mark based on concurrent use, the Commissioner shall determine and fix the conditions and limitations provided for in subsection (d) of section 1052 of this Act.

Section 2(d) also provides 15 U.S.C. Sec. 1052(d):

Concurrent registrations may also be issued by the Commissioner when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce.

*See Avon Shoe Co., Inc. v. David Crystal, Inc.*, 171 F.Supp. 293, aff'd., 279 F.2d 607 (2d Cir. 1960), cert. den., 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); *Coastal Chemical Co., Inc. v. Dust–A–Way, Inc.*, 263 F.Supp. 351 (W.D.Tenn.1967).

In *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99 (7th Cir. 1970), it was held appropriate that the district court certify to the Commissioner that it had been determined by that court that concurrent registration of the disputed marks was indicated, leaving it to the Commissioner to prescribe the conditions and limitations of such use.

It is believed, however, that the better rule is that of *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 156 (6th Cir. 1973), holding that the court with proceedings before it should itself, under 15 U.S.C. Sec.

1071(b)(1), deal with cancellation "or such other matter as the issues in the proceeding require . . . ."

Accordingly, the Commissioner is directed to cancel WKNC's present registrations and to issue concurrent registrations to plaintiff and WKNC. The registrations shall reflect that the place of use of plaintiff's mark shall be New Jersey and so much of Pennsylvania as is included within the area defined herein and that the place of use of WKNC's mark shall be the remainder of the United States; that plaintiff's mark shall be defined as "Weiner King" or "Wiener King"; that WKNC's mark shall be as previously registered.

Submit an appropriate form of judgment on notice within 10 days.