**CHICHI'S INC., a Pennsylvania corporation; Ione DiNardo; Emilia D. Fodor and Joseph P. Fodor, Plaintiffs,**

v.

**CHI–MEX, INC., a Kentucky corporation; Chi-Chi's, Inc., a Minnesota corporation; and Chi-Mex Foods, a partnership, Defendants.**

**Civ. A. No. 82–103.**

United States District Court, W.D. Pennsylvania, Civil Division.

Aug. 12, 1983.

---

Lawrence G. Zurawsky and Harry B. Keck, Murray, Keck & Zurawsky, Pittsburgh, Pa., for plaintiffs.

Paul A. Manion and James P. Hollihan, Manion, Alder & Cohen, Pittsburgh, Pa., for defendants.

## OPINION

SIMMONS, District Judge.

Plaintiffs ChiChi's, Inc., a Pennsylvania corporation, and the individual Plaintiffs, Ione DiNardo, Emilia D. Fodor, and Joseph P. Fodor, originally brought this action against Chi-Mex, Inc., a Kentucky corporation, and Chi-Chi's, Inc., a Minnesota corporation, on January 25, 1982. On February 23, 1983, this Court permitted an amendment of the Complaint to include as a defendant Chi-Mex Foods, a partnership. The two original defendants, Chi-Chi's, Inc., and Chi-Mex, Inc., are the partners in that partnership. The Court also permitted certain other amendments to the Complaint.

The Complaint, as amended, sets forth six causes of action. Count One pleads a violation of 15 U.S.C. § 1125, and seeks damages and injunctive relief for Defendants' allegedly deliberate misappropriation and infringement of the Plaintiff's exclusive rights in the use of the service mark "Chi-Chi's", with the intent to deceive the trade and public into mistaking and confusing Plaintiffs as the source and origin of the services provided by Defendants.

Count Two pleads that the Plaintiffs' continued and widespread use of the service mark "ChiChi's" has caused it to acquire a distinctive meaning and that the Defendants' actions constitute unfair competition at common law and under 15 U.S.C. § 1125(a), and further, that Defendants have been unjustly enriched to the detriment of the Plaintiffs.

Count Three alleges that Defendants' use of the corporate name Chi-Chi's, Inc., is deceptively similar to the corporate name of Plaintiff, ChiChi's, Inc., in violation of the Pennsylvania Business Corporation Law, 15 P.S. § 1202 B. Plaintiffs seek to enjoin Defendants' use of the allegedly deceptively similar corporate name.

Count Four alleges the violation of Plaintiffs' common law service mark rights in the use of "ChiChi's" and seeks injunctive relief.

Count Five alleges the infringement of Plaintiffs' Commonwealth of Pennsylvania registered service mark, "ChiChi's", and seeks injunctive relief.

Count Six pleads unlawful and tortious interference with business relations, including misdesignation of origin and misrepresentation of Defendants' restaurant services; Defendants' infringement of Plaintiffs' service mark and registered service mark; Defendant's unlawful misappropriation of Plaintiff's corporate name and other acts of business interference.

Both parties filed motions for Summary Judgment on February 14, 1983. Defendants contend that the pleadings, depositions, answers to interrogatories and discovery materials show that there is no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law. Plaintiffs' Motion essentially alleges the same. Each side having submitted numerous briefs and memoranda pertaining to the Summary Judgment motions, and extensive and thorough oral argument having been heard, the Motions are now ready for decision.

In 1956, Frank DiNardo and his wife Ione DiNardo, established and operated as a partnership in Bridgeville, Pennsylvania, a restaurant known as "ChiChi's." Frank DiNardo was known as "Frank" by his friends and associates, but his wife called him "Checchino", an Italian diminutive of "Francesco", which was what Frank DiNardo was known by in Italy. "ChiChi's" was adopted as the name of the restaurant, although Frank DiNardo was not called "Chi-Chi" until after the restaurant had been in operation for about fifteen years, and then because of his association with that restaurant.

In December, 1976, Frank DiNardo and his wife Ione DiNardo and Emilia DiNardo incorporated in the Commonwealth of Pennsylvania under the name of "ChiChi's, Inc.". The corporation has operated the Bridgeville restaurant since that date, and

upon the death of Frank DiNardo in 1980, Ione DiNardo acquired his shares. The Bridgeville ChiChi's is a family restaurant with a reputation for serving Italian-American food, and more specifically, pizza.

Defendant Chi-Chi's, Inc., a Minnesota corporation headquartered in Kentucky, owns, operates, and franchises family style Mexican restaurants throughout the United States, which are operated and franchised under the name "Chi-Chi's." The trade name "Chi-Chi's" was registered with the United States Patent and Trademark Office on December 6, 1977, by a predecessor corporation to Chi-Chi's, Inc.

The name of Defendants' corporation and the chain of Mexican restaurants is based on the fact that "ChiChi" is the nickname of Barbara McDermott, the wife of one of the founders of the Defendant corporation.

In October, 1981, a Chi-Chi's Mexican franchise restaurant was opened at 1598 Washington Road in the Mt. Lebanon/Upper St. Clair area of Allegheny County, with the building in Upper St. Clair and the parking lot in Mt. Lebanon. At that time, Chi-Mex, Inc. was the franchisee for Chi-Chi's. Following a reorganization, the partnership of Chi-Mex Foods was formed, which has as partners Chi-Mex, Inc. and Chi-Chi's, Inc.

Defendants have erected and prominently displayed signs on their Upper St. Clair building bearing the name "Chi-Chi's". Defendants subsequently opened a second restaurant in Greentree, Allegheny County, Pennsylvania, which also bears the designation "Chi-Chi's"; and advertising of the Defendants' name "Chi-Chi's" has been carried out in the Pittsburgh area.

Plaintiff seeks injunctive relief and damages for Defendants' misuse and misappropriation of the service mark "ChiChi's" in connection with Defendants' restaurant services, a false designation of said services, under the provisions of 15 U.S.C. § 1125, and for unfair competition at common law and under 15 U.S.C. § 1125(a).

15 U.S.C. § 1125(a), provides in pertinent part: "Any person who shall ... use in connection with ... services ... a false designation of origin, or any false description or representation, including words or other symbols ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ Under section 1125, the registration of a mark is not a prerequisite for recovery, and Plaintiff's mark has never been federally registered.

■ There are generally two essential elements required to establish trademark infringement or unfair competition:

(1) That the public recognizes plaintiff's symbol as identifying his goods or services and distinguishing them from those of others, and (2) that defendants' actions cause a likelihood of confusion among the relevant buyer class. Element (1) could be shown in either of two ways: (a) that plaintiff's symbol was inherently distinctive, or (b) that even if not inherently distinctive, the symbol has become distinctive through the acquisition of "secondary meaning."

J.T. McCarthy, 1 *Trademarks and Unfair Competition,* § 15:1 at 514 (1973).

In order to assess the validity and strength of trademarks, courts have developed four categories of marks: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *McGregor-Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126 (2d Cir.1979).

A generic term is one which is commonly used as the name or description of a kind of goods. *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11 (2d Cir.1975). Such a term can be afforded no trademark protection. *Id.; Skinner Mfg. Co. v. Kellogg Sales Co.,* 143 F.2d 895 (8th Cir.1944). A descriptive term is one which conveys an immediate idea of the ingredients, qualities, or characteristics of the goods. Such a term is entitled to trademark protection only if it has acquired secondary meaning. *Callman, Unfair Competition, Trademarks, and Monopolies,* § 77.4; *Stix Products,*

*Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479 (S.D.N.Y.1968). Suggestive terms fall in between the merely descriptive category and the arbitrary and fanciful category—that is, such terms are neither exactly descriptive nor exactly arbitrary and fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976). Such terms are entitled to trademark protection without proof of secondary meaning. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). Arbitrary and fanciful terms are those which have no relation to the nature of the product. Such terms are afforded the strongest trademark protection. *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126 (2d Cir. 1979).

*Scott v. Mego International, Inc.,* [∘]519 F.Supp. 1118 (D.Minn.1981) (footnote omitted).

The name "ChiChi's" is obviously not a generic term commonly used to name or describe a kind of goods. Nor is it a descriptive term conveying an immediate idea of the ingredients, qualities or characteristics of the goods. Thus "ChiChi's" must be either a suggestive or arbitrary term.

Defendant contends that because "ChiChi" is a common name, proof of secondary meaning is required. In *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3d Cir.1978), the Court required proof of secondary meaning of the Scott surname, although *Scott* involved noncompeting products, i.e., plastic and paper products as opposed to household cleaners. In the instant case, of course, competing restaurant services are involved. Likewise, secondary meaning was required in *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),* 544 F.2d 1167 (2d Cir.1976), where the tradename "Vera" was a common name and was used in the context of noncompeting goods; and in *Ferrara v. Scharf,* 466 F.Supp. 125, 132 (S.D.N.Y.1979), where "Ferrara" was an Italian surname. On the basis of the undisputed facts presented in this case, however, Plaintiff's use of "ChiChi's" is entitled to protection because it is a distinctive mark which has acquired secondary meaning.

The fact that "ChiChi's" is derived from a nickname does not mean that Plaintiff may not acquire rights in that name. In *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.,* 350 F.Supp. 1341, 1359 (E.D. Pa.1972), the Court found that the validity of the trademark by Plaintiff was not affected by the fact that Plaintiff's corporation was a surname, where no one in Defendant's organization had that surname. In this case, the wife of a member of Defendant's corporation has the same nickname as the Plaintiff's trade name, but the reasoning in *Dunhill* is equally appropriate here. There is no reason to deny the Plaintiff the right to use the "ChiChi" name simply because it is a nickname. Indeed, Defendant has also pointed out that in addition to being a nickname, "ChiChi" is also a French word which has been assimilated into the English language as an adjective meaning "elaborately ornamented," "arty," "chic," "fashionable," and also as a Spanish or Mexican word meaning "large breasts." In addition, this is not a situation wherein both Plaintiff and Defendant are relatively new organizations both attempting to assert rights in the name "ChiChi's" at the same time. *See Stouffer Corp. v. Winegardner & Hammons, Inc.,* 502 F.Supp. 232 (S.D.Ohio 1980).

The scope of protection to be afforded a trade mark or service mark is dependent on the strength of that mark.

A mark is strong if it is conspicuously distinctive; it is distinctive if the public has already been educated to accept it as the hallmark of a particular source. Then, too, a mark can be distinctive either because it is unique, that is, distinctive in itself, because it has been the subject of wide and intensive advertisement, or because of a combination of both. ... It seems to follow as a necessary conclusion that the trademark has the advantage of strength where its owner has invested a considerable amount in advertising, or can establish use over a substantial period of time on a great

quantity of articles, as symbolic of his business, or has also used the mark as a corporate name.

Callmann, *Unfair Competition, Trademarks and Monopolies,* § 82.1, pp. 755–56 (3d ed. 1969), quoted in *Alfred Dunhill of London, supra,* 350 F.Supp. at 1357 (Footnotes omitted).

A weak mark will protect only similarly marketed goods, whereas a strong mark may be applied to protect noncompeting products. Since the case herein involves competition in similar goods, that is, restaurant services, even a weak mark may be entitled to protection. Plaintiff's mark will be protected if it is distinctive or if it has acquired secondary meaning.

■ Secondary meaning "exists when the [service mark] is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin." *Scott Paper Company, supra,* 589 F.2d at 1228. In the context presented in this case, it would encompass the situation where the purchasing public thinks of the name "ChiChi's" as standing for the business of the Plaintiff. *Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 266 A.2d 87 (1970). In determining whether secondary meaning has been established, the following criteria are relevant: the length and manner of the use of the mark; the nature and extent of advertising and promotion of the mark; and the efforts made to promote a conscious connection in the public between the name and a particular venture. *Scott, supra; Dunhill, supra.* The *Wiener King* cases, 407 F.Supp. 1274 and 192 U.S.P.Q. 353, *infra,* are not dispositive of the secondary meaning issue in this case, since the existence of secondary meaning was apparently not a disputed issue in that case, and that case did not involve a nickname as the instant case does.

■ With respect to the length and manner of use, the uncontradicted facts indicate that Plaintiff has been in continuous business since 1956 under the name "ChiChi's." Under the Lanham Act, 15 U.S.C. § 1052(f), a mark can be registered as distinctive upon a showing of continuous use for five years. Under Pennsylvania law, 54 Pa.C.S.A. § 1111, a mark primarily a surname or a descriptive mark may not be registered, but a distinctive mark may be so registered, and a mark, such as a surname, becomes distinctive by proof of continuous use for five years. Plaintiff has more than met these requirements as a result of being in continuous business for over twenty five years.

During its more than twenty five years in business, Plaintiff has continuously expanded and remodeled its business. Plaintiff has also prominently used, advertised and displayed the name "ChiChi's". The name "ChiChi's" appears outside the restaurant and on their menus. ChiChi's has also engaged in radio and newspaper advertising and promotional activities, such as flyers, especially in connection with the Sports Haven, a Bridgeville bowling alley, where ChiChi's advertised their restaurant in Bridgeville and offered discount coupons. (Deposition of Emilia Fodor at 82–83).

The uncontroverted facts also demonstrate that Plaintiff's name "ChiChi's" and the restaurant venture are well-connected in the minds of the public. For example, on the occasion of Plaintiff ChiChi's twenty-fifth anniversary of the restaurant, the Collier Township Board of Commissioners officially commended and congratulated Mrs. Ione DiNardo for the significant economic and social contribution ChiChi's made to the Collier Township area. The Commissioners also noted that "ChiChi's has become a landmark in the area, well-known as a family restaurant. The progress of ChiChi's, demonstrated by the expansion of the restaurant's facilities over the years, is testimony to the longstanding quality of your products and service." The presentation ceremony for the congratulatory letter was reported in the local paper. See Exhibits 2 and 3 in support of Plaintiff's Motion for Summary Judgment.

Taken together, all of these undisputed facts indicate that Plaintiff's use of "ChiChi's" has acquired secondary meaning, and

that mark is therefore entitled to protection.

■ The other element that must be shown to establish service mark infringement or unfair competition is a likelihood of confusion, which exists "when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co., supra.*

■ Some of the factors to be considered in analyzing the likelihood of confusion are: (1) the strength of Plaintiff's mark; (2) the degree of similarity between the marks; (3) the nature and similarities of the products involved; (4) the area and manner of marketing of the products; (5) the degree of care likely to be used by the consumers in using the services; (6) evidence of actual customer confusion; (7) the extent to which the sales efforts are the same; and (8) evidence as to whether Defendant intended to "palm off" his goods as those of the Plaintiff. *See Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir.1978); *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1173 (2d Cir.1976); *Scott v. Mego International, Inc.,* 519 F.Supp. 1118, 1128–35 (D.Minn.1981).

As stated previously, the mark "ChiChi's" is more than a descriptive mark, and by its long continuous use has become a strong mark.

Both Plaintiff's and Defendant's service mark are virtually identical, differing only in the presence of a hyphen in Defendant's mark. Both names are pronounced identical to the other's name, and both are concerned with restaurant services located in adjacent areas, Plaintiff's business being on Washington Pike, and Defendant's business being on Washington Road.

This is not a situation wherein two different products are involved which appeal to different classes of consumers. Because related restaurant services are involved, the Plaintiff and Defendant are in direct competition with one another in a proximate geographical area, and consumer confusion over the nearly identical names and addresses is extremely likely.

There is also some evidence of actual confusion between the two restaurants in the record. Plaintiff ChiChi's received deliveries of materials they did not order which were invoiced to them at their Bridgeville address. Plaintiff's restaurant received calls at their restaurant for employees of the Defendant. Plaintiff received hospital bills for Defendant's employees, and family court orders for Defendant's employees. Such mail was addressed to "ChiChi's, 1168 Washington Pike, Bridgeville", which is Plaintiff's correct address, rather than to Defendant's Washington Road address. Plaintiff has also received phone calls from customers attempting to make reservations for Defendant's restaurant, and Plaintiff has taken some reservations for its restaurant where the people making the reservations did not show up at Plaintiff's restaurant, but at Defendant's restaurant. Deposition of Emilia D. Fodor, pp. 67–74; Deposition of Joseph Fodor, pp. 67–70.

Under all the circumstances, and after considering the factors previously enumerated, there is sufficient uncontroverted evidence on the record to establish the likelihood of confusion. Thus Plaintiff's mark is entitled to protection within the trade or market area it serves. "[T]wo marks thus may not coexist in the same trade area; and plaintiff, as the first user, achieves exclusivity by virtue of its common law right to protection." *Wiener King, Inc. v. Wiener King Corporation,* 407 F.Supp. 1274, 1280 (D.N.J.1976). However, the geographic area under which Plaintiff may enjoy the exclusive use of its mark is yet to be determined in this litigation. Although the trade area of Plaintiff will consist of the zone of potential expansion, the advertising zone, and the reputation zone, *Wiener King, Inc. v. Wiener King Corp.,* 192 USPQ 353 (3d Cir.1976), there is presently insufficient data in the record from which this Court

738

can presently determine the appropriate scope of the injunctive relief, thus necessitating a hearing on the merits on this issue. It is also to be noted that this Court did not consider either Plaintiff or Defendant's survey evidence at this juncture of the proceedings. This court, after the hearing on the merits, and after receiving testimony on the reliability of said surveys, will consider the appropriate weight to be accorded to the survey evidence in this Court's determination of the extent of the geographical area in which Plaintiff is entitled to protection.

Plaintiff may be entitled to recover money damages, if any, for the actual damages it can prove it has suffered, but the resolution of this issue cannot be decided in this proceeding and must ultimately be decided by the jury.

An appropriate Order will be entered.

### ORDER

AND NOW, this 12th day of August, 1983, after hearing, argument, consideration of the briefs and the contentions of the parties on the cross motions for Summary Judgment presented in the above-captioned case; and for the reasons set forth in the Accompanying Opinion,

IT IS ORDERED that Defendant's Motion for Summary Judgment be and the same is hereby DENIED; and the Plaintiff's Motion for Summary Judgment be and the same is hereby GRANTED in part and only with respect to Plaintiff's entitlement to injunctive relief. IT IS FURTHER ORDERED that a hearing on the merits as to the extent and scope of Plaintiff's injunctive relief be set for 9:30 A.M., November 3 and 4, 1983, in Courtroom 5, United States Post Office and Courthouse, 6th Floor, Pittsburgh, Pennsylvania, 15219.

Plaintiff's Motion for Summary Judgment is DENIED in all other respects.