THE HUB, INC., a Virginia
Corp., Plaintiff,

v.

MANHATTAN–WARD, INC., a
Pennsylvania Corp.,
Defendant.

Civ. A. No. 84–0052–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 16, 1987.

Nelson Blitz, Fairfax, Va., for plaintiff.

Alan H. Bernstein, Philadelphia, Pa., James V. Lane, Harrisonburg, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case comes before the court upon an action for common law service mark infringement and unfair competition and for violation of § 43(a) of the Lanham Act. 15 U.S.C. § 1125. A trial was held before this court, sitting without a jury.

### I.

Plaintiff, The Hub, Inc. [hereinafter Leesburg Hub] has operated a retail clothing establishment in Leesburg, Virginia since 1935. Defendant, Manhattan–Ward, Inc. [hereinafter Manhattan–Ward], a subsidiary of Manhattan Industries, Inc. with a principal place of business in Conshohocken, Pennsylvania, operates a chain of 28 mens and boys retail clothing stores in Pennsylvania, New Jersey, Delaware, Maryland, and Virginia. One of these stores, located in Wilkes–Barre, Pennsylvania, has done business almost continuously since 1909 using the name "The Hub." Since 1981, all but one of the Manhattan–Ward stores have traded under the name, "The Hub". Manhattan–Ward obtained a federal registration of the mark "The Hub" in July, 1982. As part of a continuing expansion program, Manhattan–Ward opened its first and only Virginia store in March, 1984, at the Apple Blossom Mall in Winchester, under the name "The Hub". Prior to the opening of the Winchester Store, Leesburg Hub notified Manhattan–Ward of its objections to the use of the name "The Hub". After to the filing of this lawsuit, Manhattan–Ward opened another store in the Francis Scott Key Mall in Frederick, Maryland, again using the name "The Hub". Plaintiff amended the complaint to include the Frederick store as well.

### II.

Plaintiff alleges common law trademark infringement and unfair competition, as well as a violation of § 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). The legal test applicable to these claims is the same: whether the use of the mark by the defendant is likely to cause confusion on the part of the public. *Skippy, Inc. v. CPC International, Inc.*, 210 U.S.P.Q. 589 (E.D. Va.1980); *Pizzeria Uno v. Temple*, 747 F.2d 1522 (4th Cir.1984). In this case, there is no question that the likelihood of public confusion would be quite great if the plaintiff and the defendant operated in the same market area. Not only do the parties sell similar goods, but they carry some of the same brands of clothing. Indeed, at trial Leesburg Hub produced evidence of actual confusion by some customers. This anecdotal evidence is not sufficient to prove Leesburg Hub's case, however. Leesburg Hub must also show that the parties do in fact operate in the same market.

Manhattan–Ward, by virtue of its federal registration, is entitled to use the servicemark "Hub" for the entire country, except in areas of proved prior use by others. Leesburg Hub thus has the burden of proving the area in which it continuously used the mark "Hub" from a point in time prior to July, 1982, when Manhattan–Ward's federal registration was issued. Under existing law, Leesburg Hub must establish significant market penetration into a given area under the name "The Hub" in order to be entitled to the exclusive use of the mark in that area. *Natural Footwear, Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3rd Cir.1985); *Sweetarts v. Sunline, Inc.*, 380 F.2d 923 (8th Cir.1967); *Weiner King, Inc. v. Weiner King Corp.*, 615 F.2d 512 (C.C.P.A.1980) [1].

The present case is similar to *Weiner King* in many respects. In *Weiner King*, the proprietor of three hot dog restaurants

---

1. The citations herein follow the spelling in the cases as reported.

in Flemington, New Jersey, sought to enjoin the defendant, which owned a chain of hot dog restaurants in several states, from expanding into New Jersey. The District Court granted the plaintiff a permanent injunction prohibiting the defendant from using its mark within the state of New Jersey and in the state of Pennsylvania within forty miles of Flemington. On appeal, the Court of Appeals for the Third Circuit held that the plaintiff had failed to meet its burden of establishing the extent of its trade area as found by the District Court. The Appeals Court concluded that on the basis of the plaintiff's advertising and reputation, its protection should be limited to the Flemington area.

Like the plaintiff in *Weiner King*, Leesburg Hub is a local business. The Leesburg Hub has confined its operations to Leesburg, where it has operated a single store for many years. Leesburg Hub has not expanded its operations in the past, and shows no intention of doing so in the future. In contrast, Manhattan–Ward operates an expanding chain of retail stores. The question here, as in *Weiner King*, is the depth of plaintiff's market penetration outside its immediate location.

*Winchester Market*

At trial, Leesburg Hub introduced evidence purporting to show significant penetration into the main marketing area of the Apple Blossom Mall in Winchester, the site of Manhattan–Ward's Winchester store. Unfortunately, Leesburg Hub elected to analyze its own sales distribution by telephone exchange area. Since the evidence of the mall's sales distribution was broken down by zip code, the market areas were difficult to compare. Moreover, Leesburg Hub's expert, Professor Gantz, based his analysis on an enlarged market area for the mall. Professor Gantz included in his calculations several areas where Leesburg Hub customers reside even though the areas fall outside the mall's market area as defined by the shopper study presented as evidence in this case. This study, which was prepared by the BeckerKanter firm for the Apple Blossom Mall for purposes unrelated to this lawsuit, provides a persuasive definition of the mall's market area.

■ After reviewing all of the evidence submitted, the court finds that Leesburg Hub draws less than five percent of its customers from the mall's primary and secondary markets, which together account for ninety percent of the mall's sales. In the court's view, this is not sufficient market penetration to merit the relief sought by Leesburg Hub. The plaintiff in *Weiner King* was denied relief even after showing sales to customers all over the State of New Jersey. *See Weiner King, Inc. v. Wiener King Corp.*, 407 F.Supp. 1274 (D.N.J.1976). Further, Leesburg Hub's advertising is focused largely on the Leesburg area and Loudoun County, with relatively little overlap with the mall's market area. For example, Leesburg Hub advertises in the *Loudoun Times Mirror*. The mall's shopper study revealed that only two percent of the mall's shoppers read the *Times Mirror*.

In sum, plaintiff Leesburg Hub has operated a single store in Leesburg for fifty years, without expanding beyond its immediate market area. Leesburg Hub does not direct its advertising at the main market area served by the Apple Blossom Mall, nor does it draw a significant percentage of its customers from that area. Accordingly, the court will deny Leesburg Hub any relief with respect to Manhattan–Ward's store in Winchester, Virginia. *Weiner King, supra; Natural Footwear, supra; Wrist–Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 578 F.2d 727 (8th Cir.1978).

*Frederick Market*

With respect to Leesburg Hub's penetration into the market served by Manhattan–Ward's store in Frederick, Maryland, the record again makes a determination difficult. The main market area of the Francis Scott Key Mall, where Manhattan–Ward's store is located, was poorly defined in the evidence produced at trial. The Francis Scott Key Mall consumer behavior study relied upon by Leesburg Hub indicates only that half of the mall's customers live within the Frederick zip code and that another 30.6 percent live in nearby zip code areas in Maryland. The study gives no

clue to the location of the remaining 19.4 percent of the shoppers in the survey.

Leesburg Hub presented no evidence about its sales volume in the Francis Scott Key Mall market area. Instead, Leesburg Hub bases its argument on the study's finding that 14.5 percent of the mall's customers drive between twenty-one and thirty minutes to reach the mall.[2] Because significant portions of Loudoun County are within a thirty minute drive of Frederick, Maryland, Leesburg Hub maintains that there is substantial overlap between its market and Manhattan–Ward's. The 14.5 percent figure includes customers driving to the mall from all directions, however, not just from Loudoun County. Therefore, the actual percentage of the mall's customers living in Loudoun County must be substantially smaller. Indeed, Ms. Lenore Brugh, marketing director for Crown America, the mall's owner, stated in her deposition that the vast majority of the shoppers at the Francis Scott Key Mall come mainly from northern and eastern Frederick County, Maryland. The mall study corroborates this distribution. At most, Leesburg Hub has shown that a small percentage of the Francis Scott Key Mall's customers live in Loudoun County. Leesburg Hub has not shown that it penetrated the mall's major marketing area, either by sales data or advertising.

Considering the evidence as a whole, the court concludes that Leesburg Hub has failed to meet its burden of proving penetration into the market area of Manhattan–Ward's Frederick store. The court will therefore deny the relief requested by Leesburg Hub with respect to that market area.

For the foregoing reasons, the court finds for the defendant, Manhattan–Ward.

An appropriate Order shall this day issue.

---

**2.** The overwhelming majority of the mall's customers, approximately 84 percent, drive less than twenty minutes to reach the mall.